A00A1445. JOSEPH v. HOME DEPOT, INC. et al.
(542 SE2d 618)

POPE, Presiding Judge.

George Joseph sued the Home Depot and its employee, Rhonda Trammel, for malicious prosecution and false imprisonment. The trial court granted the defendants' motion for summary judgment, and Joseph appeals. For the following reasons, we affirm in part and reverse in part.

The record establishes that on August 28, 1997, a person identifying himself as George Joseph presented a check to Home Depot. This person presented a driver's license with the name "George Joseph" on it. The check bore the address: "685 Martin Luther King Drive, Wilkes Hall, Room 203, Atlanta, GA 30314." Despite the fact that the unknown perpetrator identified himself as Joseph, the check which Home Depot received bore a different driver's license number from Joseph's license.

NationsBank dishonored the check because it was drawn on an account which had been closed before the date on which the check was presented. Trammel, who worked in the bookkeeping department of the store, submitted an affidavit in which she avowed that she tried to contact Joseph by phoning him at the number that was printed on the check, but she was unsuccessful. Trammel then sent a certified letter regarding the check to the Martin Luther King Drive address. Several days later, on September 12, 1997, she received the return receipt, which indicated that someone had signed for and received the letter. Nevertheless, the record contains a copy of the certified letter, which was marked "Return to Sender Unable to Forward."

Although Joseph once lived at the Martin Luther King Drive address, this address was an on-campus school dormitory located at Morris Brown College where he lived for only a semester. By early 1996, before the check was written or Home Depot had sent the certified letter, Joseph was living at another address. Although Joseph testified that he filed a change of address with the post office, he testified that he did not receive this letter.

After receiving the signed receipt, Trammel requested the mag-

istrate court to issue a citation regarding the check. In her affidavit submitted with her motion for summary judgment, Trammel stated that she did not know Joseph at the time she requested the citation and that she did not bear him any ill will or malice.

Joseph claims that the first he knew of any problems with Home Depot was when he received this notice from the Gwinnett County court. This citation — which Joseph admits he received — instructed him to appear in court on December 5, 1997. Joseph testified that after receiving the citation, he went to the Gwinnett court and spoke with the magistrate clerk. Joseph recalled that he told the clerk that he had not written the check and that it was not his signature on the check. After speaking with the magistrate clerk, Joseph went to the police department and reported his checks lost or stolen. The police report documenting this visit is dated November 4, 1997. There is evidence that on December 5, 1997, Joseph returned to court with all of the documents he had which demonstrated that he had not written the check. Joseph testified that he spoke with a judge, who advised him to go to Home Depot with his documents. According to his deposition testimony, Joseph followed the judge's instructions, went to Home Depot and spoke with the supervisor there. Joseph asked to speak with Trammel, who was listed as complainant on the citation. Joseph then gave the Home Depot supervisor his driver's license and his Social Security card, and the supervisor made a copy of these documents. Joseph testified that he also gave his name, his address and his phone number to this Home Depot employee.

The court scheduled a hearing on the matter for January 2, 1998. The court again sent the notice to the Martin Luther King Drive address, and Joseph testified that he did not receive this notice. Trammel appeared at the hearing, but Joseph did not. The magistrate issued a warrant for Joseph's arrest. On a later date, Newton County police stopped Joseph for a traffic violation. Because there was a warrant outstanding for his arrest, they arrested him. He was held for a total of 77 hours in jail before being released. Eventually, the charges against Joseph were nolle prossed.

1. Joseph argues that the court erred in concluding that defendants were entitled to tort immunity under OCGA § 16-9-20. We agree that given the evidence in this case, Home Depot and Trammel were not immune from liability.

OCGA § 16-9-20 (h) (1) states in pertinent part:

> Any party holding a worthless instrument and giving notice in substantially similar form to that provided in subparagraph (a) (2) (B) of this Code section shall be immune from civil liability for the giving of such notice and for proceeding as required under the forms of such notice. . . .

Subsection (h) (1) provides an exception to the notice requirement when the bank refuses payment of the instrument on the basis of no account existing at the bank at which the instrument was drawn.

Subsection (a) (2) (A) of OCGA § 16-9-20, which provides the guidelines for giving notice, states:

> Notice mailed by certified or registered mail or statutory overnight delivery evidenced by return receipt to the person at the address printed on the instrument or given at the time of issuance shall be deemed sufficient and equivalent to notice having been received as of the date on the return receipt by the person making, drawing, uttering, executing, or delivering the instrument.

Several cases construe the immunity provisions of OCGA § 16-9-20. In *Stallings v. Coleman*, 165 Ga. App. 667 (302 SE2d 412) (1983), the factual context presented to the court was similar to that presented here. In *Stallings*, the plaintiff was arrested on a bad check charge. Coleman followed the appropriate statutory procedures and sent the appropriate notice to Stallings. Nevertheless, there was evidence that when Stallings received the notice, he contacted Coleman's agent and informed her that the check was one which had been stolen from him. Nonetheless, a warrant for his arrest issued after he did not respond to the statutory notice.

In determining that the immunity did not apply to the defendant, the *Stallings* court focused on the language of the statute. The court noted that for the immunity to attach, it must appear that the notice was sent and that, as now set forth in subsection (h), the holder of the check proceeded "under the forms of such notice."[1] Thus, because there was evidence that Stallings gave the exculpatory information to the defendant's agent and because there was no showing that the defendant forwarded the information to the police, the court determined that the defendant had not shown his entitlement to the immunity. Id. at 668 (1). See also *Wilson v. Wheeler's, Inc.*, 190 Ga. App. 250, 254-255 (2) (378 SE2d 498) (1989); *Tallman v. Hinton*, 220 Ga. App. 23, 25 (2) (467 SE2d 596) (1996).

Similarly, here the immunity does not apply because there is evidence that Joseph presented information to Home Depot which showed that he did not write the check and that he was the victim of fraud. Nevertheless, Home Depot continued to prosecute him.[2]

---

[1] Although *Stallings* was decided under the predecessor to OCGA § 16-9-20 (Code Ann. § 26-1704), the provisions pertinent to our inquiry are the same.

[2] Although under subsection (h) (1) there is a requirement that Home Depot notify the maker of the check when there is no account with the bank, we do not analyze this issue

Accordingly, there was a factual issue as to whether the defendants "acted maliciously in failing to request that the prosecution be terminated after learning what had actually happened." (Punctuation omitted.) *Stallings*, 165 Ga. App. at 668 (2).

Our decision is bolstered by the decision in *Nicholl v. Great A & P Tea Co.*, 238 Ga. App. 30, 37 (2) (517 SE2d 561) (1999) (physical precedent only), in which the court focused on the statutory language in determining that the immunity did not apply when an unknown perpetrator had written checks on a fraudulent checking account using plaintiff Nicholl's identity to pass the checks. The *Nicholl* court determined that the plaintiff, who was the victim of financial identity fraud,[3] was not affected by the immunity provisions, stating: "immunity under OCGA § 16-9-20 (h) (1) applies only to suits by those who 'made, drew, uttered, executed, or delivered such instrument,' and not to persons who were the victims of " 'financial identity fraud.' " Id. at 38 (2). But see *Grand Union v. Edwards*, 217 Ga. App. 154 (456 SE2d 736) (1995) (immunity applied where exculpatory information was provided to the defendant *after* the arrest warrant issued).

2. Joseph claims that the court erred in granting summary judgment because a factual issue remains as to whether defendants maliciously prosecuted him. He contends that the court wrongly concluded as a matter of law that defendants had probable cause to pursue the investigation. Again, we agree.

> The elements of malicious prosecution include: (1) prosecution for a criminal offense; (2) the prosecution instigated under a valid warrant, accusation, or summons; (3) termination of the prosecution in favor of the plaintiff; (4) malice; (5) want of probable cause; and (6) damage to the plaintiff.

(Citations and punctuation omitted.) *Medoc Corp. v. Keel*, 166 Ga. App. 615-616 (1) (305 SE2d 134) (1983). See also OCGA § 51-7-40.

With respect to the element of lack of probable cause, this court has said: "Want of probable cause is the gravamen of an action for malicious prosecution; and there can be no recovery by the plaintiff when there was any probable cause for the prosecution, even though

---

because the evidence indicated that Joseph was not the maker of the instrument.

[3] Financial identity fraud is set forth in OCGA § 16-9-120 et seq., which was effective July 1, 1998. OCGA § 16-9-121 provides the elements of the offense:

A person commits the offense of financial identity fraud when without the authorization or permission of another person and with the intent unlawfully to appropriate financial resources of that other person to his or her own use or to the use of a third party he or she . . . (2) Accesses or attempts to access the financial resources of the other person through the use of identifying information (including checking account numbers).

it may appear that the prosecutor was actuated by improper motives." (Citations omitted.) *Nicholl*, 238 Ga. App. at 33, citing *Kviten v. Nash,* 150 Ga. App. 589, 591 (4) (258 SE2d 271) (1979).

Although probable cause does not mandate absolute verification, the defendant must act with a certain level of reasonableness in beginning the prosecution. "The defendant is not necessarily required to verify his information, where it appears to be reliable; but where a reasonable man would investigate further before beginning the prosecution, he may be liable for failure to do so." (Citation omitted.) *Nicholl*, 238 Ga. App. at 34, citing *Melton v. LaCalamito*, 158 Ga. App. 820, 824 (2) (b) (282 SE2d 393) (1981).

Similarly, in this case, there was a jury question as to whether a reasonably prudent person would have made further inquiry to determine the identity of the perpetrator before prosecuting and as to whether Home Depot lacked probable cause to continue the prosecution after Joseph presented the exculpatory documents. See generally *Branson v. Donaldson*, 206 Ga. App. 723, 726 (3) (426 SE2d 218) (1992). The evidence showed that Joseph went to Home Depot with documents which indicated that he did not write the check and that the return of the certified letter had indicated the Martin Luther King Drive address was not Joseph's home. These factors created a jury issue.

3. Although summary judgment was improper with respect to Joseph's claim for malicious prosecution, it was properly granted on his claim for false imprisonment. In *Williams v. Smith*, 179 Ga. App. 712, 713 (2) (348 SE2d 50) (1986), the court explained:

> False imprisonment is an intentional tort, not a tort of negligence. In an action to recover damages for illegal arrest or false imprisonment the only essential elements are the arrest or detention and the unlawfulness thereof. With regard to the element of unlawfulness in the tort of *false* imprisonment, the law has always made a fundamental distinction between a detention effectuated pursuant to process and detention which is not predicated on process. An action for false imprisonment will lie where a person is unlawfully detained under a void process, or under no process at all, and cannot be maintained where the process is valid, no matter how corrupt may be the motives of the person suing out the process or how unfounded the imprisonment may be. . . . Where the arrest is by valid process regularly sued out, action for malicious prosecution is the only remedy.

(Citations and punctuation omitted; emphasis in original.) Id. at 714. See also *Ridgeview Institute v. Handley*, 224 Ga. App. 533-534 (1)

(481 SE2d 531) (1997); *Reese v. Clayton County*, 185 Ga. App. 207 (363 SE2d 618) (1987). In this case there was no evidence of invalid process, and the court properly granted summary judgment on the false imprisonment count.

*Judgment affirmed in part and reversed in part. Miller and Ellington, JJ., concur.*

DECIDED NOVEMBER 21, 2000 — 

*Frank M. Gaither, Sr.*, for appellant.
*Drew, Eckl & Farnham, George R. Moody, Michael R. Merlino II*, for appellees.