**FOURTH DIVISION
BARNES, P. J.,
RAY and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/

**July 14, 2015**

# In the Court of Appeals of Georgia

A15A0297. STEPHENS et al. v. ZIMMERMAN.

RAY, Judge.

Joshua Zimmerman sued the Mayor and Aldermen of the City of Savannah (the "City") and Samantha Stephens, a police officer/detective trainee with the Savannah-Chatham Metropolitan Police Department , raising State law claims of false imprisonment, false arrest, and malicious prosecution. He amended his complaint to allege a violation of 42 USC § 1983. These claims arise from Zimmerman's contention that he was wrongfully arrested and prosecuted for crimes related to an incident of vandalism to vehicles in a downtown Savannah parking garage. The trial court granted in part and denied in part the City and Stephens's motions for summary

judgment as to their respective immunities. The City and Stephens appealed.[1] For the reasons that follow, we reverse.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. On appeal from the denial or grant of summary judgment, the appellate court is to conduct a de novo review of the evidence to determine whether there exists a genuine issue of material fact, and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law.

(Punctuation and footnotes omitted.) *Taylor v. Campbell*, 320 Ga. App. 362, 362 (739 SE2d 801) (2013).

In brief, the underlying basis for Zimmerman's claims is that some witnesses told police that one of several perpetrators was a black male. Zimmerman is white. He argues, inter alia, that he was wrongfully arrested and prosecuted because Stephens failed to perform an adequate investigation, ignored facts, and testified falsely. The City and Stephens counter that, under the applicable legal standard, Stephens had probable cause to arrest Zimmerman and that there is no evidence of

---

[1] The appellants requested that transcripts not be included in the record on appeal.

actual malice triggering a waiver of their respective sovereign and official immunities.

Viewed most favorably to Zimmerman as the nonmoving party, the record reveals that some, but not all, of the witnesses to the crimes at issue identified the suspects as two white males, a Hispanic male, and a black male. Other witnesses only mentioned three suspects, none of whom was black. Three suspects, Michael Martin, Remijio Botello, and Seth Stratton eventually tendered guilty pleas. Martin and Stratton are white; Botello is Hispanic.

The record shows that at approximately 2:20 a.m. on June 25, 2011, a group of men damaged five vehicles and a motorcycle in a Savannah parking garage. Officer Amir Delic with the Savannah-Chatham Metropolitan Police Department completed a police report on the damage and possible suspects, and handled initial witness interviews. Stephens then began investigating the case.

Delic and Stephens both filed reports. Delic's report states that eyewitness Matthew Socienski saw *four* men – two white men, one Hispanic man, and one black man – damaging multiple vehicles in the garage. Socienski saw the men leave the scene in a gray Chevrolet Trailblazer with Georgia license tag number BIG 2415. Stephens did not interview Socienski.

3

Delic's report states that eyewitness Megan Neary, whose car was damaged, told him that she saw *three* men – two white men and a Hispanic man – damaging vehicles, and that they left the scene in a dark gray sport utility vehicle with the license plate BIG 2415. By contrast, Stephens's report says Neary saw *four* men get on a garage elevator, then she heard smashing noises. Neary went to another floor to look for her car, saw two men damaging a vehicle and a third in the driver's seat of a Trailblazer with the BIG 2415 tag. Stephens's report says Neary stated that "all *three* subjects who were damaging the vehicle" (emphasis supplied) then got into the Trailblazer. She described the driver as white and one passenger as Latino, but could not describe the person who got in the backseat.

Delic's report states that Christina Birchfield, the garage attendant, saw a dark sport utility vehicle leaving the garage around the time of the incident. She mentioned *three* men – the driver, who was white; and two passengers, one white and one Hispanic. Stephens's report indicates that Birchfield described the men as "army guys" with whom she was familiar, and that she had seen one of the suspects who later pled guilty, Martin, arguing with people in another vehicle. Stephens's report does not mention the ethnicity or the number of men Birchfield observed.

Delic's report indicates that he was then advised to contact Sean Young, who owned the motorcycle that had been damaged during the incident. Young was not an eyewitness. Young told Delic that he spoke with the parking attendant, Birchfield, and based on that discussion believed he knew the perpetrators. Young was a bouncer at a local club and said he saw the suspects most weekends. He identified them as Martin, Botello, and Stratton – the men who eventually pled guilty. He also said he saw a black man with them at the club, but did not know that man's name. Stephens's report states that Young told her the men had been in the club that night, had left together, and that "they had gotten drunk before and had done stupid stuff like that." Young also said he had called one of the men, Martin, who denied involvement but admitted that his tag number was BIG 2415. Young described Martin as a white male with tattoo "sleeves," Stratton as a "possibly white Latino male," Botello as a Latino male, and the fourth suspect as "black."

Stephens also interviewed the four suspects. Stratton denied damaging any vehicles, but acknowledged that he was out with Martin, "Ray" Botello and "Josh" Zimmerman on the night in question.

Martin told Stephens that although he was at the garage, he was intoxicated and did not remember seeing his friends damage anything. He said he was with Stratton

5

and "Josh Zimmerman," whom he believed lived together, and that he was also with "a Mexican kid named Ray."

Botello told Stephens that he had been with Martin, and with "Seth" and "Josh" whose last names he did not know. He said he knew about the damage but could not remember well enough to know if he was involved. He later admitted that he and the men he was with "kinda went crazy in the garage," that he smashed a windshield, that "Josh" and "Seth" pushed over a motorcycle and that the three of them were "running around destroying stuff," but that Martin did not do anything. Stephens' report does not indicate that Botello said anything about the ethnicity of the men he was with.

Using social media and other resources, Stephens found and interviewed Zimmerman, who said he was not in downtown Savannah on the night in question. He said his roommate could vouch for his being at home. He denied knowing suspects Martin, Stratton, and Botello, or the victim Young, and said he had never been to the club where Young worked.

According to Stephens' report, Zimmerman later called her to say that he did know Stratton because Stratton had been in a fight with his roommate, that he'd seen Stratton the day he got a tattoo, and that Stratton was framing him because of the fight with Zimmerman's roommate. In his deposition, however, Zimmerman stated that he

6

looked up Stratton and Martin on FaceBook and recognized them from the tattoo parlor. However, he said he never told Stephens he knew Stratton from an altercation with his roommate, but rather that he told her his roommate had a prior altercation with the tattoo artist.

Stephens obtained warrants for the suspects' arrest, after consulting with her superior. Only after Zimmerman was arrested did Stephens contact Zimmerman's roommate, who confirmed his alibi.

1. The City and Stephens argue generally that the trial court should have found Zimmerman's claims barred by sovereign immunity as to the City and official immunity as to Stephens. We agree.

(a) Applicable cause of action.

The trial court granted summary judgment to Stephens and the City on Zimmerman's claim of false imprisonment, leaving, as to his State law claims, only the issues of false arrest and malicious prosecution. Our case law distinguishes between these remaining torts: "false or malicious arrest is detention 'under process of law' (OCGA § 51-7-1); and . . . malicious prosecution is detention with judicial process followed by prosecution (OCGA § 51-7-40)." *Ferrell v. Mikula*, 295 Ga. App. 326, 329 (2) (672 SE2d 7) (2008). The distinction is important because

"[m]alicious prosecution and malicious arrest are mutually exclusive; if one right of action exists, the other does not." (Citation and punctuation omitted.) *Perry v. Brooks*, 175 Ga. App. 77, 78 (3) (332 SE2d 375) (1985) .

Where, as here, there has been an arrest pursuant to a warrant, the remedy depends on whether the accused was prosecuted. "If after the arrest[,] the warrant is dismissed or not followed up, the remedy is for malicious arrest. But if the action is carried on to a prosecution, an action for malicious prosecution is the *exclusive remedy*, and an action for malicious arrest will not lie." (Citation omitted; emphasis supplied.) *Garner v. Heilig-Meyers Furniture Co.*, 240 Ga. App. 780, 781-782 (1) (525 SE2d 145) (1999).[2]

Zimmerman was arrested pursuant to a warrant. He was jailed and released about two days later after an initial video appearance before a judge. He was charged with false statements and writings and with four counts of criminal damage to property.

---

[2] Although Zimmerman's complaint uses the term "false arrest," he in fact cites to and states a claim under OCGA § 51-7-1, the statute addressing malicious arrest. The torts of false arrest and malicious arrest are different. False arrest contains no malice element. Zimmerman clearly averred that Stephens "maliciously caused" his arrest. See *Drug Emporium, Inc. v. Peaks*, 227 Ga. App. 121, 128-129 (2) (d) (488 SE2d 500) (1997) (where there was no averment as to malice, complaint did not allege malicious arrest but rather alleged false arrest).

After a preliminary hearing on July 14, 2011, before the Chatham County Recorder's Court, the charges were dismissed. An inquiry before a "committing court" is a required element of malicious prosecution claim. OCGA § 51-7-42; see *Renton v. Watson*, 319 Ga. App. 896, 899 (1) (739 SE2d 19) (2013). The Chatham County Recorder's Court is authorized to take and entertain pleas of guilty and nolo contendere in misdemeanor cases. *Pough v. State*, 162 Ga. App. 63, 64 (1) (290 SE2d 300) (1982). As the Recorder's Court is a committing court, Zimmerman's only claim is for malicious prosecution. *Perry*, supra.

(b) Malicious prosecution.

The City and Stephens argue that the trial court erred in finding a fact question as to whether Stephens had probable cause to arrest Zimmerman in the context of the malicious prosecution claim. See *Renton*, supra at 898 (1) (defining the six elements of a malicious prosecution claim). We agree.

Zimmerman essentially argues there was no probable cause and that this, coupled with evidence of actual malice, necessitates the trial court's denial of the City and Stephens's motion for summary judgment. To successfully prosecute a tort claim for malicious prosecution, "a plaintiff must show that the defendant acted both

9

without probable cause and maliciously[.]" (Citations omitted.) *Anderson v. Cobb*, 258 Ga. App. 159, 160 (2) (573 SE2d 417) (2002).

> Malice is an element of malicious prosecution and may be inferred by a total lack of probable cause.[3] Our initial inquiry, however, is not whether [Stephens] acted maliciously for purposes of the tort of malicious prosecution, but whether she acted with *actual* malice that would exempt her from official immunity. Official or qualified immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption. In Georgia, a public officer may be personally liable . . . for discretionary acts performed with malice or an intent to injure.

(Punctuation and footnotes omitted; emphasis in original.) *Marshall v. Browning*, 310 Ga. App. 64, 67 (712 SE2d 71) (2011). Zimmerman acted with discretionary authority in investigating and obtaining arrest warrants. See *Anderson*, supra at 160 (2).

In the context of official immunity, "[a]ctual malice requires a deliberate intention to do wrong[.] . . . Ill will alone is insufficient to establish actual malice;

---

[3] See *Joseph v. Home Depot, Inc.*, 246 Ga. App. 868, 871-872 (2) (542 SE2d 618) (2000) ("Want of probable cause is the gravamen of an action for malicious prosecution; and there can be no recovery by the plaintiff when there was any probable cause for the prosecution, even though it may appear that the prosecutor was actuated by improper motives") (citations omitted).

[Zimmerman] must show that [Stephens] acted with the deliberate intent to commit a wrongful act or with the deliberate intent to harm [him]." (Citation omitted.) Id. Deliberate intent does not mean "merely an intent to do the act purportedly resulting in the claimed injury" and "[a]ctual malice does not include implied malice or the reckless disregard for the rights and safety of others." (Footnotes omitted.) *Marshall*, supra at 68.

Zimmerman argues that Stephens should have investigated further before arresting him, and should have questioned witnesses and suspects about the race of the fourth suspect. He also alleges that she made inconsistent, possibly untrue, statements.

However, without more, "such actions do not show a deliberate intent to commit a wrongful act or to harm [Zimmerman]." *Anderson*, supra. We find no evidence that Stephens was motivated by personal malice toward Zimmerman. Further, Stephens sought arrest warrants based on information that included statements from one eyewitness who said *four* men were involved – two white men, a Hispanic man, and a black man, and two other eyewitnesses who reported seeing only two white males and a Hispanic male. The other person who told officers a black male might be involved was not an eyewitness. Further, one perpetrator told Stephens

11

he was with "Josh Zimmerman" on the night in question and the other two suspects said they also were with "Josh." Stephens testified that she could not find a black Josh Zimmerman, and that she discussed her findings with her supervisor, who concurred in her decision to arrest Zimmerman.

When Stephens interviewed Zimmerman, she noted that just as the other suspects had done, he initially denied involvement. He also initially said he did not know the other suspects, but later called Stephens to say he did know one of them. As Stephens testified, "[T]he fact that Josh, just as the three of them tried to clear themselves, Josh first denied knowing who any of them were, then had some sort of relationships with Seth Stratton, would only make me believe that, you know, just as they tried to disassociate themselves with things that occurred, why wouldn't he?"

This Court has found that if a jury could reasonably infer that police officers arrested the plaintiff despite knowing that the plaintiff did not commit the crimes at issue and, thus, that the officers deliberately intended to do a wrongful act, the officers were not entitled to summary judgment. *Bateast v. DeKalb County*, 258 Ga. App. 131, 132-133 (572 SE2d 756) (2002).[4] However, we also have determined that

---

[4] We note that probable cause does not mandate absolute verification, but the officer must act with a certain level of reasonableness in beginning the prosecution. "The [officer] is not necessarily required to verify his information, where it appears

where an officer's decision to seek warrants might be characterized as "misguided" there was nevertheless no evidence that the actions were taken with actual malice for purposes of official immunity. Similarly, absent malice or intent to injure, no liability attaches to the officer's exercise of [her] lawful discretion even when the decision to effectuate the arrest is flawed.

(Citations and punctuation omitted.) *Marshall*, supra at 69.

Based upon the foregoing, we further find that the City has not waived its sovereign immunity. OCGA §§ 36-33-1 (b), 36-33-3. See *Crisp County School System v. Brown*, 226 Ga. App. 800, 804 (2) (487 SE2d 512) (1997). For the foregoing reasons, the trial court erred in denying the City's and Stephens's motion for summary judgment.

2. Zimmerman alleged that his due process rights were violated under 42 USC § 1983 because he was arrested without probable cause. Stephens and the City argue that Zimmerman raised this claim only against the City and not Stephens in her

_____

to be reliable; but where a reasonable man would investigate further before beginning the prosecution, he *may* be liable for failure to do so." (Citations and punctuation omitted; emphasis supplied.) *Joseph*, supra at 872 (2).

individual capacity. As a result, they argue, the trial court erred in denying their motion for summary judgment as to Stephens on this point.

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." OCGA § 9-11-15 (b). Because the appellants did not include transcripts of the summary judgment hearing in the appellate record, we have no way of knowing what matters or objections were raised. We must assume the trial court had authority to consider the issue. See *Johnson v. Ware*, 313 Ga. App. 774, 776 (1) (723 SE2d 18) (2012).

To survive the City and Stephens's bid for summary judgment in a § 1983 action, Zimmerman bears the burden of proof in showing that genuine issues of material fact exist as to whether Stephens's "acts or omissions, performed under color of [S]tate law, resulted in the deprivation of a right, privilege, or immunity protected by the United States Constitution or the laws of the United States." (Citations omitted.) *Means v. City of Atlanta Police Dept.*, 262 Ga. App. 700, 705 (2) (586 SE2d 373) (2003).

In the context, as here, of a § 1983 claim predicated on a lack of probable cause, "[t]he Supreme Court has held that a police officer will be liable under Section

14

1983 if [s]he applies for a warrant and 'a reasonably well-trained officer . . . would have known that [her] affidavit failed to establish probable cause and that [s]he should not have applied for the warrant.'" (Punctuation omitted.) *Franklin* v. *Consolidated Govt. of Columbus, Ga.*, 236 Ga. App. 468, 471 (2) (512 SE2d 352) (1999), citing *Malley v. Briggs*, 475 U. S. 335, 345 (III) (106 SCt 1092, 89 LE2d 271) (1986).

Zimmerman argues that Stephens's investigation leading up to his arrest was constitutionally deficient because she elected not to pursue easily ascertainable information regarding the ethnicity of the fourth suspect, there was conflicting information as to the fourth suspect's residential address, and because she failed to interview his alibi witnesses until after he was arrested. While in the § 1983 context the Eleventh Circuit has found that "an officer may not choose to ignore information that has been offered to him or her . . . or elect not to obtain easily discoverable facts[,]" *Kingsland v. City of Miami*, 382 F.3d 1220, 1229 (2) (11th Cir. 2004), that Court also recognized that police officers "are not required to perform error-free investigations" or "investigate every proffered claim of innocence." (Citation omitted.) Id. at n. 10.

15

Probable cause exists if the facts and circumstances within the officer's knowledge, of which he or she has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed . . . an offense. However, the appropriate inquiry for qualified immunity is not whether there was probable cause, but whether there was "arguable" probable cause to arrest. In other words, we must determine whether reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest.

(Citations and punctuation omitted; emphasis omitted.) *Pickens v. Hollowell*, 59 F.3d 1203, 1206 (II) (A) (11th Cir. 1995). As outlined in Division 1, given the information before her at the time of the arrest, we cannot say that no reasonable officer in the same circumstances and with the same knowledge Stephens possessed could have believed he or she had probable cause to arrest Zimmerman. Further, while Stephens's investigation was less than perfect, "[i]nadvertent errors, honest mistakes, agency confusion, even negligence in the performance of official duties, do not warrant redress under [42 USC § 1983]." (Citation and punctuation omitted.) *Forney v. Purvis*, 190 Ga. App. 192, 195 (1) (378 SE2d 470) (1989).

3. Given our determinations in Divisions 1 and 2, we need not reach appellants' remaining contentions of error.

*Judgment reversed. Barnes, P. J., concurs. McMillian, J., concurs in judgment only as to Division 1 and concurs fully otherwise.*