[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-11262
Non-Argument Calendar
_____

D.C. Docket No. 1:17-cv-01780-WMR

DARNELL BROWN,

Plaintiff-Appellee,

versus

C.R. GILL,
individually and in his official capacity as an employee of Dekalb County,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(November 19, 2019)

Before JORDAN, NEWSOM, and ANDERSON, Circuit Judges.

PER CURIAM:

C. R. Gill, an officer with the DeKalb County, Georgia, Police Department, appeals the district court's denial of his motion for summary judgment, which he raised on the grounds of federal qualified immunity and Georgia official immunity. Officer Gill was sued by Darnell Brown for malicious prosecution after he arrested Brown for impersonating a police officer, obstruction, and prowling or loitering. On appeal, Gill argues that the district court erred in denying his summary judgment motion because he had probable cause to effectuate Brown's arrest, he did not act with malice, and Brown failed to show a clearly established constitutional right that Gill violated. For the reasons stated below, we affirm.

## I.

On June 2, 2015, several officers who were serving on one of the DeKalb County Police Department's crime suppression units were surveilling a parking lot at a Super 8 hotel in Tucker, Georgia, where they suspected that prostitution and other illegal activity was occurring. Officer D. L. Craig observed a vehicle pull into the parking lot in front of room 115.[1] The driver, Darnell Brown, exited the vehicle, knocked on the door of room 115, and entered, where he remained for approximately twenty minutes.[2] While Brown was in the room, Craig spoke with

---

[1] Gill contends that room 115 was "a room known for prostitution activities."

[2] The record is foggy on what Brown was doing in the room. Gill suggests that Brown was paying a prostitute, "Patricia," for sex, while Brown responds that he was merely visiting a friend. The district court did not make a finding of fact in this regard. We decline to do so, either, because whatever happened in the room does not affect the outcome of this case.

2

Officer C. R. Gill—who was a member of the same unit, but parked elsewhere at the time—and advised him of the activity.  Officer Gill informed Craig that he was on his way to the hotel, and asked Craig for the make, model, and license plate of Brown's car, which Craig provided him.  Gill confirmed that the vehicle was registered to Brown's wife.  Craig asked Gill if he wanted to stop Brown's car, to "[s]ee if you can get [probable cause] on that?"  Several minutes later, when Brown left the room and returned to his vehicle, Gill responded, "Alright uh [probable cause] on him would be good. We'll stop him, get him to admit something, and then uh we'll go over and knock on that door [to room 115]."  Gill located Brown's vehicle and reported to Craig that Brown did not use a turn signal when he turned onto a county road, so he pulled him over.

The parties differ on what exactly happened next.  In denying Gill's motion for summary judgment, the district court found:

> At the time of the stop, Plaintiff (who worked as a security guard) was wearing black or blue military-type apparel with a plain black shirt and had various security officer or law enforcement paraphernalia in his vehicle. On the back seat of his vehicle was a blue or black shirt emblazoned with the words "Special Officer GA" or "Special Security Officer" in large font. On the floor of the back seat was a duty belt and holster with a firearm, pepper spray, a baton, handcuffs, flashlight, and a radio covered by a blue or black jacket also emblazoned with the words "Special Officer GA" or "Special Security Officer" and bearing a gold metal badge that said "Loss Prevention Officer."

3

Gill articulates a slightly different version of events.  He testified in his deposition that "when [Brown] was pulling his license out, he was, kind of, fumbling around getting his license out and, kind of, flashing a star badge, and that's when I, kind of, noticed there's a badge in the wallet."  That description is inconsistent with he contemporaneously summarized the traffic stop on his police radio; there, in response to a question from Officer Craig, he said, "Uh he didn't show it [his star badge] but I saw it."

In any event, after noticing the aforementioned, Officer Gill asked Brown if he was in law enforcement.  Brown stated in his deposition that he responded that he worked in the "security business" for a "private security" company, and that he worked for the Fulton County Sheriff's Department in their Special Detail Unit in the past.[3]  Meanwhile, in Gill's deposition, he stated that Brown told him that he was "retired, but still [Peace Officer Standards and Training]-certified in Fulton County" and was "still working on work programs."  Brown disputed this, testifying in his deposition that "[a]t no time period did I mention I was P.O.S.T. certified or I currently work for a police department or a law enforcement department."

---

[3] In his deposition, Brown testified that this was true—he worked for the Fulton County Sheriff's Department from approximately 1988 to 1994.

After the traffic stop, which resulted in Gill issuing Brown no citation, Gill conferred on his police radio with Craig and Sergeant Caviness, their supervisor. Caviness advised Gill to "go over to Fulton County and make sure he's not just impersonating and if he is, we'll get warrants on him."  A short period of time later, Gill spoke with Craig on the radio and informed him that Brown had "been arrested for impersonating an officer" in the past.  According to the narrative that Gill wrote to accompany the incident report that he drafted, he spoke with the Fulton County Sheriff's Department the next day about Brown's claim that he had worked for them in the past.  In his deposition, Gill explained that he spoke with the sheriff's department "[t]o find out if [Brown] was actually POST-certified or if his story was even adding up."  Gill talked with Captain Kevin Walker and suggested to him that Brown "possibly has a Fulton County Badge on his person."  Neither Walker nor a sergeant from internal affairs were able to confirm that Brown had worked at the sheriff's department in the past.

Later that day, Gill wrote out three arrest warrants for Brown that each alleged a different criminal violation.  The first alleged that Brown impersonated a police officer in violation of O.C.G.A. § 16-10-23.  In support of this warrant, Gill stated that Brown "flash[ed] his badge during the first approach to the accused vehicle on a traffic stop" and "advised that he just recently retired from the Fulton County Sheriff's Department working 28 years."  The second warrant alleged that

5

Brown committed obstruction, in violation of O.C.G.A. § 16-10-24(a), because he lied and "impersonate[d] an officer [and] stat[ed] that he was not in the Super 8 Motel pandering."  The third warrant alleged that Brown was loitering or prowling in violation of O.C.G.A. § 16-11-36(a), the basis of which was that Brown "advised he was a retired officer just helping out the female in reference to an outreach program."

After the warrants were issued, Brown turned himself in to the DeKalb County Sheriff's Office.  Brown later challenged the bases for the warrants, arguing in court that the traffic stop was unconstitutional.  The state court judge agreed and granted Brown's motion to suppress, resulting in a nolle prosequi order on April 19, 2016.

On May 16, 2017, Brown filed a claim against Officers Craig and Gill, asserting claims for false arrest and malicious prosecution in violation of 42 U.S.C. § 1983 and for malicious prosecution, false imprisonment, and intentional infliction of emotional distress under Georgia law.  Craig and Gill moved to dismiss Brown's claims.  The district court dismissed Brown's claims for false arrest and false imprisonment but denied their motion as to the claims for malicious prosecution and intentional infliction of emotional distress.  The officers then moved for summary judgment on the basis of qualified and official immunity,

6

which the district court granted as to Craig, but denied as to Gill.  Gill timely appealed to us.

## II.

We review a district court's denial of qualified immunity de novo.  Nolin v. Isbell, 207 F.3d 1253, 1255 (11th Cir. 2000).  Because Officer Gill raised the defense of qualified immunity in a motion for summary judgment, he will prevail if there is no genuine dispute as to any material fact.  Black v. Wigington, 811 F.3d 1259, 1265 (11th Cir. 2016).  In evaluating the facts, we "view all evidence and make any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party," but "only to the extent supportable by the record."  Loftus v. Clark-Moore, 690 F.3d 1200, 1203 (11th Cir. 2012).

Qualified immunity protects "government officials acting within their discretionary authority" from suits unless their conduct "violates clearly established federal statutory or constitutional rights of which a reasonable person would have known."  Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010).  When the official demonstrates that he was acting within the scope of his discretionary—as was inarguably the case here—"the burden shifts to the plaintiff to establish that qualified immunity is not appropriate."  Maddox v. Stephens, 727 F.3d 1109, 1120 (11th Cir. 2013).  Specifically, the plaintiff must demonstrate (1) that his constitutional rights were violated and (2) that those rights were "clearly

7

established at the time of the putative misconduct." Loftus v. Clark-Moore, 690 F.3d 1200, 1204 (11th Cir. 2012). We have the discretion to evaluate these inquiries in whichever order makes the most sense given the specific factual context of the case. Pearson v. Callahan, 555 U.S. 223, 236 (2009). Here, we begin with the allegation that Brown's constitutional rights were violated.

Our circuit recognizes a federal malicious prosecution claim under § 1983 as having two constituent elements. First, the plaintiff must demonstrate that his Fourth Amendment right to be free from unreasonable seizures was violated. Second, he must prove the common-law elements of malicious prosecution, which are "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." Wood v. Kesler, 323 F.3d 872, 881–82 (11th Cir. 2003).

Given the procedural posture of this case, our review of this claim is limited to the first step in our analysis (whether Brown's Fourth Amendment rights were violated) and the second element of malicious prosecution (whether Officer Gill acted with malice and without probable cause). These issues, of course, are interrelated due to the relevance of probable cause to both of them.

We have held that the Fourth Amendment right to be free from unreasonable seizures is violated by "an arrest without probable cause." Grider v. City of

8

Auburn, 618 F.3d 1240, 1256 (11th Cir. 2010). For example, where a police officer initiates a criminal prosecution when "he should have known that his application failed to establish probable cause, or if he made statements or omissions in his application that were material and perjurious or recklessly false," he violates the arrestee's Fourth Amendment rights. Black, 811 F.3d at 1267. Conversely, where probable cause exists to effectuate *an* arrest, a claim for malicious prosecution is defeated. Id. This is true even if probable cause existed for a crime *other* than the one for which the party was actually arrested. Wilkerson v. Seymour, 736 F.3d 974, 979 (11th Cir. 2013). Moreover, an officer need not have *actual* probable cause so long as he has "arguable probable cause," which exists where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendants could have believed that probable cause existed to arrest Plaintiff." Kingsland, 618 F.3d 1240, 1257 (11th Cir. 2010).

Brown argues that Gill violated his Fourth Amendment rights by falsifying facts in the arrest warrants that he wrote out—specifically, that Brown "flashed" his badge and pretended to be a police officer. The district court, construing the evidence in the light most favorable to Brown in this summary judgment posture, indicated:

> [T]here is a genuine issue of material fact as to whether Officer Gill made a willful misrepresentation in obtaining the warrants. Specifically, at the time of the traffic stop, the evidence shows that Officer Gill informed Officer Craig that Plaintiff had not shown a

9

badge to him and that he merely noticed the badge, apparently in plain sight. However, in his affidavit in support of the arrest warrant, Officer Gill swore under oath that Plaintiff falsely held himself out as a police officer by "flashing his badge" during the traffic stop.

As suggested by the Supreme Court in Johnson v. Jones, we "simply take, as given, the facts that the district court assumed when it denied summary judgment." 515 U.S. 304, 319 (1995); see also Feliciano v. City of Miami Beach, 707 F.3d 1244, 1252 n.5 (11th Cir. 2013) (noting that "we may either accept the district court's factual findings, if they are adequate, or make our own determination of the facts") (quotations and alteration omitted).

With that in mind, we affirm the district court's denial of qualified immunity. As indicated above, we accept for purposes of this appeal that Gill falsified information in the affidavits supporting his arrest warrants and therefore, he would not have had arguable probable cause to arrest Brown. All three crimes—impersonation of a police officer, obstruction, and loitering or prowling—are inherently predicated on an officer's factual determinations and lack the sort of independent verification available in evaluating the existence of probable cause for other crimes. If Gill lied in explaining why he believed Brown committed those offenses, it is difficult to imagine how arguable probable cause existed to arrest him for them.

Gill's arguments to the contrary are unavailing. He focuses attention on our ruling in Wilkerson, where we noted that probable cause to arrest for *some* offense

10

constitutes arguable probable cause, but he fails to point to any crime that Brown committed other than the three for which he wrote his warrants.  Gill also submits that we should adopt the Second Circuit's reasoning in Ganek v. Leibowitz, in which it held that, in evaluating probable cause in a situation like this, courts should "consider a hypothetical corrected affidavit, produced by deleting any alleged misstatements from the original warrant affidavit and adding to it any relevant omitted information."  874 F.3d 73, 82 (2d Cir. 2017) (citations omitted).  But we need not embrace or reject the Second Circuit's reasoning in Ganek because it is inapplicable here.  Even if we excised the alleged lies from Gill's affidavits, we would still be left with plainly insufficient bases to justify Brown's arrest.

Finally, we have no difficulty in concluding that Brown's constitutional rights were clearly established at the time of the conduct in question.  As we noted in Kelly v. Curtis, the Supreme Court has held that "the Constitution prohibits an officer from making perjurious or recklessly false statements in support of a warrant," which we have held applies to an "improperly obtained arrest warrant."  21 F.3d 1544, 1554 (11th Cir. 1994) (emphasis removed).  And, of course, the right to not be arrested without probable cause is certainly clearly established.  E.g., Grider, 618 F.3d at 1256.

11

## III.

Next, we evaluate Gill's claim that the district court erred in denying his motion for summary judgment on official immunity grounds under Georgia law. Under Georgia law, official immunity "protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without willfulness, malice, or corruption." Cameron v. Lang, 274 Ga. 122, 123 (Ga. 2001) (quotation omitted). In other words, an officer may be personally liable only "if they act with actual malice or with actual intent to cause injury in the performance of their official functions." Ga. Const. art. I, § 2, ¶ IX. See also Lang, 274 Ga. at 123 ("[A] public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure.").

This requirement of "actual malice" is not coextensive with the requirement of "malice" in malicious prosecution. The Supreme Court of Georgia has noted that "actual malice" excludes "'implied malice,' i.e., the reckless disregard for the rights or safety of others," instead requiring "'express malice,' i.e., a 'deliberate intention to do wrong.'" Murphy v. Bajjani, 282 Ga. 197, 203 (Ga. 2007) (quotation omitted). The legal standard for evaluating the existence of actual malice is whether "[a] jury could infer from the evidence presented" that the

12

officer was acting with actual malice.  See, e.g., Greenway v. Northside Hosp., Inc., 328 Ga. App. 473, 474 (Ga. Ct. App. 2014).

In applying this standard, Georgia courts have noted that actual malice is not present where an officer did not "manufactur[e] evidence or knowingly present[] perjured testimony," Marshall v. Browning, 310 Ga. App. 64, 68 (Ga. Ct. App. 2011), and even when an officer made "inconsistent, possibly untrue, statements." Stephens v. Zimmerman, 333 Ga. App. 586, 591 (Ga. Ct. App. 2015).  However, they have determined that a jury could find actual malice where officers improperly procured statements in pursuit of an arrest warrant "despite knowing of the statements' falsity, inaccuracy or unreliability."  Lagroon v. Lawson, 328 Ga. App. 614, 619 (Ga. Ct. App. 2014).

This suggests a rational divergence in Georgia's official immunity caselaw concerning the degree or magnitude of the (potentially) false statements contained in an arrest warrant.  Where the statements might be untrue, or where the officer doesn't know that the statements are untrue, official immunity applies, because the statements are devoid of "actual malice."  See, e.g., Zimmerman, 333 Ga. App. at 591.  But on the other hand, where the statements are actually untrue, and the officer writing out the warrant knows that this is the case, official immunity doesn't apply because "actual malice" is present.  E.g., Lagroon, 328 Ga. App. At 619; see also Browning, 310 Ga. App. at 68.

13

Accordingly, we affirm the district court's denial of summary judgment on this ground because we think that a jury could conclude that Gill acted with actual malice. Accepting the evidence that the district court assumed, as we do in this appeal, Gill fabricated details about his interaction with Brown during the June 2, 2015, traffic stop, from which a reasonable jury could infer actual malice. Accordingly, Gill is not entitled to official immunity under Georgia law.

For the foregoing reasons, we affirm the district court's denial of summary judgment on qualified and official immunity grounds.

AFFIRMED.