[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-10396

Non-Argument Calendar

_____

KENNETH GRAHAM,

Plaintiff-Appellant,

*versus*

WAYNE LUKE,
Investigator,

Defendant-Appellee,

SHERIFF NICK NORTON, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 7:20-cv-00006-HL

_____

Before JORDAN, NEWSOM, and LAGOA, Circuit Judges.

PER CURIAM:

Kenneth Graham, proceeding *pro se*, appeals the grant of summary judgment in his civil suit against a police investigator, Wayne Luke, after Graham was arrested on an outstanding warrant that Luke had obtained. On appeal, Graham first asserts that the district court improperly concluded that qualified immunity shielded Luke because, Graham asserts, Luke acted with actual malice and because no probable cause existed to support the warrant that led to Graham being arrested, photographed, fingerprinted, strip searched, placed in a holding cell, and detained for ten days. Second, Graham argues that the district court erred by concluding that official immunity shielded Luke from state-law liability because, Graham says, Luke acted with malice and without probable cause. Finally, Graham contends that the district court erred by granting summary judgment to Luke on Graham's intentional-infliction-of-emotional-distress claim. After careful review, we affirm.

**I**

After a customer handed store clerk Michelle Kilgore a counterfeit check, police sent Inspector Wayne Luke to investigate. The check was made out to Kenneth Anthony Graham. Luke put that name into the police database and found Graham's driver's license photo. He showed it to Kilgore who confirmed that Graham was the individual who presented the fraudulent check.

On this basis, Luke obtained a warrant for Graham's arrest. Several months later, another officer encountered Graham during a traffic incident and, after running his license number, arrested him pursuant to the warrant. The officer strip-searched, photographed, and booked Graham before detaining him for 10 days.

Graham filed suit against Luke, alleging a Fourth Amendment unlawful-search-and-seizure claim, an unlawful-pretrial-detention claim under federal law, a federal false-arrest claim, a state-law intentional-infliction-of-emotional-distress claim and, later, federal and state malicious-prosecution claims. Wielding official- and qualified-immunity defenses against both federal- and state-law claims, Luke secured summary judgment.

**II**

On appeal, we must determine (1) whether Luke was entitled to qualified immunity on Graham's Fourth Amendment and federal malicious-prosecution claims, (2) whether Luke was

entitled to official immunity on Graham's state-law claims, and (3) whether the district court erred by concluding that Graham failed to establish his intentional-infliction-of-emotional-distress claim.[1]

## A

We first consider whether qualified immunity shielded Luke from Fourth Amendment liability. We conclude that it did. Section 1983 provides a cause of action for private citizens against persons acting under color of state law for violating their constitutional rights and other federal laws. *See* 42 U.S.C. § 1983. An official who is sued under § 1983 may seek summary judgment on the ground that he is entitled to qualified immunity. *Crosby v. Monroe Cnty.*, 394 F.3d 1328, 1332 (11th Cir. 2004). To receive qualified immunity, Luke didn't even need to have actual probable cause, "but [rather] only 'arguable probable cause,'"—"i.e., the facts and circumstances must be such that the officer reasonably could have believed that probable cause existed." *Edger v. McCabe*, 84 F.4th 1230, 1236 (11th Cir. 2023).

What distinguishes actual from "arguable" probable cause? "Probable cause exists if the totality of the circumstances known to the officers could persuade a reasonable officer that there is a

---

[1] We review the grant of summary judgment de novo, viewing all the evidence and drawing all reasonable inferences in favor of Graham. *Fish v. Brown*, 838 F.3d 1153, 1156–57 (11th Cir. 2016). Summary judgment is appropriate if the movant shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We also review de novo "a probable cause determination." *United States v. Lebowtiz*, 676 F.3d 1000, 1010 (11th Cir. 2012).

'substantial chance of criminal activity' by the person who is arrested." *Davis v. City of Apopka*, 78 F.4th 1326, 1334 (11th Cir. 2023) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)). In this Circuit, probable cause requires "only a probability or substantial chance" of criminal activity and "does not require anything close to conclusive proof . . . or even a finding made by a preponderance of the evidence." *Paez v. Mulvey*, 915 F.3d 1276, 1286 (11th Cir. 2019). It need only be "reasonable to conclude from the totality of the circumstances that a crime was committed." *Henley v. Millsap*, No. 21-12231, 2022 WL 3654846, at *2 (11th Cir. Aug. 25, 2022) "Arguable probable cause," not surprisingly, is an even lower threshold.    Arguable probable cause exists if "a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests." *See Wesby*, 583 U.S. at 68.

Luke had actual probable cause to flag Graham for arrest. *Id*.    Luke performed a database search that revealed Graham's license, spoke with the store clerk who received the fraudulent check, showed her Graham's photograph, and received a positive identification for Graham. Although Graham argues that Luke could easily have determined that Graham was not the individual who presented the fraudulent check by reviewing video footage from the store, he never requested that footage—nor has he pointed to anything in the record that would have similar exonerating value. Because the totality of the circumstances presented an adequate basis to conclude that a crime had occurred,

Luke was not required to sift through conflicting evidence. *See Huebner v. Bradshaw*, 935 F.3d 1183, 1188 (11th Cir. 2019)

As to Graham's related malicious-prosecution claim, the district court did not err by determining that the claim failed as a matter of law. There is both a Georgia-law and common-law standard for malicious prosecution; both standards require that the prosecution be "with malice and without probable cause." *Compare Paez*, 915 F.3d at 1285, *with Renton v. Watson*, 739 S.E.2d 19, 23 (Ga. Ct. App. 2013). Graham does not point to, nor does the record reveal, any evidence that Luke acted with malice. Graham cannot establish his malicious-prosecution claim because he cannot show that prosecution occurred without probable cause and with malice.

Accordingly, the district court did not err in dismissing Graham's Fourth Amendment and malicious-prosecution claims.

**B**

We next consider Graham's state-law claims. To begin, his state-law malicious-prosecution claim warrants summary judgment based on official immunity. Under Georgia law, official immunity "protects an officer from personal liability arising from his performance of 'official functions' as long as the officer did not act with 'actual malice' or 'actual intent to cause injury.'" *Gates v. Khokhar*, 884 F.3d 1290, 1304 (11th Cir. 2018) (quoting Ga. Const. art. I, § 2, para. IX(d)). Official immunity "applies to an officer's discretionary actions taken within the scope of [his] official authority." *Id*. at 1304 (quotation marks and citation omitted). An officer acts within his discretionary authority when investigating a

case, obtaining warrants, and executing those warrants. *Marshall v. Browning*, 712 S.E.2d 71, 74 (Ga. Ct. App. 2011).

To establish a claim for malicious prosecution under Georgia law, "a plaintiff must show that the defendant acted both without probable cause and maliciously." *Stephens v. Zimmerman*, 774 S.E.2d 811, 815 (Ga. Ct. App. 2015) (quoting *Anderson v. Cobb*, 573 S.E.2d 417, 419 (Ga. Ct. App. 2002) (alteration adopted)). Malice may be inferred by a total lack of probable cause. *Id.*

In the context of official immunity, actual malice requires a deliberate intention to do wrong. *Bateast v. DeKalb Cnty.*, 572 S.E.2d 756, 758 (Ga. Ct. App. 2002). Ill will alone cannot establish actual malice. *Stephens*, 774 S.E.2d at 816. A deliberate intention to do wrong means the intent to cause the harm suffered by the plaintiff. *Murphy v. Bajjani*, 647 S.E. 2d. 54, 60 (Ga. Ct. App. 2007). Moreover, an actual intent to cause injury requires an actual intent to harm the plaintiff, not merely an intent to do the act purportedly resulting in the claimed injury. *Kidd v. Coates*, 518 S.E.2d 124, 125 (Ga. 1999).

Graham presented no evidence to show that Luke acted with actual malice or any deliberate intention to do wrong. As already explained, actual probable cause existed for Luke to seek an arrest warrant for Graham. *Huebner*, 935 F.3d at 1188; *Rankin v. Evans*, 133 F.3d 1425, 1441 (11th Cir. 1998). The existence of actual probable cause defeats Graham's claims of malicious prosecution *and false arrest*. *Stephens*, 774 S.E.2d. at 815; *see Adams v. Carlisle,* 630 S.E.2d 529, 535 (2006) (specifically addressing the false arrest

prong).    Although Graham argues that Luke misstated the information in the arrest affidavit and "knew" that Graham did not commit the charged crimes, he did not present any evidence showing that Luke intended to cause him harm. *Murphy*, 647 S.E. 2d. at 60; *Kidd*, 518 S.E.2d at 125.

In short, because Graham didn't show that Luke acted with actual malice and without probable cause, the district court did not err by concluding that Luke was entitled to official immunity on these claims.

## C

Lastly, we consider whether the district court erred in granting summary judgment to Luke as to Graham's intentional-infliction-of-emotional-distress claim. We conclude that it didn't.

A    Georgia    intentional-infliction-of-emotional-distress plaintiff must show that: "(1) the conduct giving rise to the claim was intentional or reckless; (2) the conduct was extreme and outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe." *Mayorga v. Benton*, 875 S.E.2d 908, 913 (Ga. Ct. App. 2022). The conduct must be "so extreme in degree, as to go beyond all possible bounds of decency," and whether the claim rises to the requisite level of outrageousness is a question of law. *Id.* Additionally, "[t]o demonstrate that the emotional distress [he] suffered was severe, a plaintiff must show, at the very least, that physical and/or mental manifestations of that distress required him to seek medical or psychological treatment."

23-10396               Opinion of the Court                    9

*Howerton v. Harbin Clinic, LLC*, 333 776 S.E.2d 288, 301 (Ga. Ct. App. 2015).

The district court did not erroneously conclude that even though Graham was fingerprinted, strip searched, photographed, booked, and detained for 10 days, this conduct does not rise to the requisite level of outrageousness to establish an intentional-infliction-of-emotional-distress claim. *Mayorga*, 875 S.E.2d at 913. Moreover, Graham conceded in his deposition that the stress and embarrassment that he suffered because of his arrest had not manifested into a physical form, nor had he sought any psychological or medical treatment, as required. *Howerton*, 776 S.E.2d at 301. Thus, the district court did not err in concluding that Luke was entitled to judgment as a matter of law on Graham's intentional-infliction-of-emotional-distress claim.

In sum, the district court correctly determined that summary judgment was proper as to Graham's state-law claims.

⋆    ⋆    ⋆

For the foregoing reasons, the district court did not err in granting summary judgment in favor of Luke against Graham's Fourth Amendment claim, his federal and state malicious-prosecution claims, and his state-law intentional-infliction-of emotional-distress-claim.

**AFFIRMED**.