[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-10848

_____

D.C. Docket No. 1:12-cv-03365-RWS


ERNEST EDGAR BLACK,
AMY ELIZABETH BLACK,
a.k.a. Amy Merritt,

                                                          Plaintiffs-Appellees,

versus

JEFF WIGINGTON, Sheriff,
ROBERT WILSON,
DAVID KAIN,
ANDY STAMATELLOS,

                                                          Defendants-Appellants.


_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(January 22, 2016)

Before WILSON, WILLIAM PRYOR, and GILMAN,[*] Circuit Judges.

_____

[*] Honorable Ronald Lee Gilman, United States Circuit Judge for the Sixth Circuit, sitting by designation.

WILLIAM PRYOR, Circuit Judge:

This interlocutory appeal requires us to decide whether four police officers are entitled to immunity from suit. It stems from an unpleasant run-in between the plaintiffs, Ernest and Amy Black, and the sheriff's department in Rockdale County, Georgia. Several police officers searched the Blacks' trailer because they thought it belonged to someone else. There the officers found large amounts of contraband. The officers then arrested the Blacks, and Ernest spent over a month in jail. While incarcerated, Ernest was injured, and the medical staff placed him in a special cell where he enjoyed fewer privileges than other inmates. The district attorney prosecuted the Blacks, but dropped the charges after the superior court suppressed the evidence from the trailer. The Blacks then sued the officers who searched their home, the officers who arrested them, and the sheriff in charge of the jail. They alleged violations of their federal constitutional and statutory rights, 42 U.S.C. § 1983, and various claims under state law. The officers moved for summary judgment based on official immunity under Georgia law, qualified immunity under federal law, and sovereign immunity under the Eleventh Amendment. The district court rejected these defenses. We reverse in part and affirm in part. We conclude that all of the officers are immune from suit, except for the sheriff.

## I. BACKGROUND

On August 14, 2010, Deputies David Kain and Andy Stamatellos of the Rockdale County Sheriff's Office attempted to execute an arrest warrant for William Lynn "Rabbit" Wilson. The deputies drove to Rabbit's last known address—a dilapidated trailer in the woods. They knocked on the front door, but no one answered. The deputies then walked to the back of the trailer, where they found a door with a window on it. The screen on the window was cut near the doorknob, which the deputies thought was consistent with burglary. When the deputies checked the doorknob, it was unlocked. The deputies entered the trailer and performed a protective sweep to look for the burglar and any victims. During the sweep, they observed marijuana, pill bottles containing marijuana seeds and roaches, and bulletproof vests and t-shirts that belonged to the sheriff's department. The deputies exited the trailer without touching anything and called their supervisor.

The deputies' supervisor, Investigator Robert Wilson, arrived shortly thereafter. He told the deputies to stay put while he left to obtain a search warrant. In his application for a search warrant, Investigator Wilson described the drugs and stolen property that the deputies had seen in plain view. He also explained that the deputies had entered the trailer because they suspected a burglary based on the torn screen and unlocked door. A magistrate judge issued the search warrant.

3

While the deputies were waiting for the investigator to return, Ernest and Amy Black showed up. As it turned out, they lived in the trailer, not Rabbit. The investigator later returned with the search warrant, and the officers searched the Blacks' trailer. The officers seized the marijuana and the clothing from the sheriff's department, and they found several crack pipes as well. The officers arrested the Blacks and took them to the county jail. That same day, Investigator Wilson applied for arrest warrants. His application cited the evidence that the deputies found in the Blacks' trailer and stated that he had probable cause to believe that the Blacks had committed the crimes of possession with intent to distribute marijuana, Ga. Code Ann. § 16-13-30(j); possession of drug-related objects, *id.* § 16-13-32.2; and theft by receiving stolen property, *id.* § 16-8-7. A magistrate judge issued the arrest warrants.

Ernest Black spent over a month in the county jail. At the time, Sheriff Jeff Wigington was in charge of the sheriff's department, which runs the jail. While incarcerated, Ernest fell down the stairs and injured his back. The medical staff placed Ernest in a booking cell so they could monitor his condition more closely. Inmates in booking cells do not receive the same privileges as inmates in the general population—for example, they cannot shower without asking permission, watch television, exercise, or mingle in the common area. Their beds are also less comfortable, and the lights are never dimmed.

4

The district attorney prosecuted Ernest and Amy Black on the drug and theft charges. The Blacks moved to suppress the evidence that the officers found in their trailer. They argued that the evidence was discovered during an illegal search in violation of the Fourth and Fourteenth Amendments. The superior court agreed and granted the Blacks' motion to suppress. The superior court ruled that the deputies' initial entry into the trailer was illegal. The arrest warrant did not permit their entry because they had no reason to believe that Rabbit was inside. Nor did exigent circumstances justify their entry: the deputies did not hear anyone burgling the trailer, and the cuts on the screen were unreliable because the entire trailer was in disrepair. Because the deputies' initial entry was invalid, the superior court ruled that the search warrant was invalid as well. Accordingly, the superior court suppressed the drugs, drug paraphernalia, and clothing that the officers found in the trailer. The district attorney then dropped the charges against the Blacks.

The Blacks later filed a civil action in the district court against Deputy Kain, Deputy Stamatellos, Investigator Wilson, Sheriff Wigington, and three jailers. Their complaint alleged seven counts. They sued the deputies for trespass, false imprisonment, and an illegal search under Georgia law. They sued the deputies and investigator for malicious prosecution under federal law, and they sued the deputies, investigator, and sheriff for false arrest. The Blacks also brought a claim of inadequate medical care against the sheriff and the jailers. Finally, they sued the

sheriff in his official capacity for violations of Title II of the Americans with Disabilities Act. The Blacks sought money damages from each defendant.

As the litigation progressed, several defendants and claims were dismissed. The Blacks voluntarily dismissed two of the jailers. Later, they conceded that the third jailer should be dismissed, that their claim of inadequate medical care lacked merit, and that their claim of false arrest was untimely. The district court also dismissed their claim of false imprisonment as untimely. What remained were the Blacks' claim of trespass against the deputies, their claim of malicious prosecution against the deputies and investigator, and their claim under Title II of the Disabilities Act against the sheriff.

With respect to these remaining claims, the officers filed a motion for summary judgment on the basis of immunity. The deputies argued that, under Georgia law, they are entitled to official immunity from the claim of trespass. The deputies and investigator argued that, under federal law, they are entitled to qualified immunity from the claim of malicious prosecution. And the sheriff argued that, under the Eleventh Amendment, he is entitled to sovereign immunity from the claim under Title II. The district court rejected each of these defenses.

The district court ruled that the deputies were not entitled to official immunity from the claim of trespass. In Georgia, a state official cannot be sued for his discretionary actions unless he acted with "actual malice" or an "actual intent to

6

cause injury." Ga. Const. art. I, § 2, ¶ IX(d). The district court reasoned that a factual dispute remained about whether the deputies acted with actual malice: "A jury could find that Defendants intended to enter the trailer knowing they lacked a warrant or exigent circumstances (a deliberate intention to do wrong), constituting a trespass under Georgia law." With respect to the claim of malicious prosecution, the district court reasoned that the deputies' entry was clearly unlawful because they had no reason to believe that Rabbit Wilson was inside or that a burglary was taking place. The district court assumed that, if the deputies' entry was unlawful, then the drugs and property found in the trailer could not serve as probable cause. As for the claim under Title II of the Disabilities Act, the district court concluded that the Act abrogates sovereign immunity when a defendant's conduct simultaneously violates Title II and the Fourteenth Amendment, *United States v. Georgia*, 546 U.S. 151, 159, 126 S. Ct. 877, 882 (2006), and that "irrationally preventing disabled persons from accessing activities and services in prisons" would violate both Title II and the Equal Protection Clause.

## II. STANDARD OF REVIEW

We review *de novo* whether the officers are entitled to immunity. *Hoyt v. Cooks*, 672 F.3d 972, 981 (11th Cir. 2012) (official immunity); *Townsend v. Jefferson Cty.*, 601 F.3d 1152, 1157 (11th Cir. 2010) (qualified immunity); *Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d

7

1297, 1313 (11th Cir. 2011) (sovereign immunity). Because the officers raised their defenses in a motion for summary judgment, they should prevail if there is "no genuine dispute as to any material fact" and they are entitled to immunity "as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, we view the evidence in the light most favorable to the Blacks and draw all reasonable inferences in their favor. *See Valderrama v. Rousseau*, 780 F.3d 1108, 1112 (11th Cir. 2015). But an inference is not "reasonable" and a dispute is not "genuine" if it is based on conclusory allegations and speculation. *Id.*; *Marshall v. City of Cape Coral*, 797 F.2d 1555, 1559 (11th Cir. 1986).

## III. DISCUSSION

The officers contend that they are immune from the Blacks' remaining claims. The deputies contend that they are entitled to official immunity from the claim of trespass, the deputies and investigator contend that they are entitled to qualified immunity from the claim of malicious prosecution, and the sheriff contends that he is entitled to sovereign immunity from the claim under Title II of the Disabilities Act. We address these defenses in turn, and we conclude that the deputies and investigator are entitled to immunity but the sheriff is not.

### A. *The Deputies Are Entitled to Official Immunity from the Claim of Trespass Under Georgia Law.*

The Blacks contend that Deputies Kain and Stamatellos are liable for trespass because they entered the Blacks' trailer unlawfully. In Georgia, a person

8

commits a trespass if he "unlawfully interferes" with "[t]he right of enjoyment of private property." Ga. Code Ann. § 51-9-1. But under the Georgia Constitution, state officials are entitled to official immunity for their discretionary actions unless they acted with "actual malice" or an "actual intent to cause injury." Ga. Const. art. I, § 2, ¶ IX(d). The Blacks argue that the deputies' entry was so unlawful that it raises an inference of actual malice. The deputies respond that the facts justify no such inference.

We agree with the deputies that their conduct does not raise an inference of actual malice under Georgia law. Actual malice is a demanding standard: it requires an officer to act with "a deliberate intention to do a wrongful act." *Adams v. Hazelwood*, 520 S.E.2d 896, 898 (Ga. 1999). True, a jury can infer actual malice based on an officer's conduct. *See Lagroon v. Lawson*, 759 S.E.2d 878, 883 (Ga. Ct. App. 2014). But unreasonable conduct does not support such an inference. *See Bashir v. Rockdale Cty.*, 445 F.3d 1323, 1333 (11th Cir. 2006); *Marshall v. Browning*, 712 S.E.2d 71, 75 (Ga. Ct. App. 2011); *Anderson v. Cobb*, 573 S.E.2d 417, 419 (Ga. Ct. App. 2002). Even recklessly illegal conduct does not support an inference of actual malice. *See Murphy v. Bajjani*, 647 S.E.2d 54, 60 (Ga. 2007); *Daley v. Clark*, 638 S.E.2d 376, 386 (Ga. Ct. App. 2006).

Nothing in this record suggests that the deputies acted with actual malice. The deputies consistently stated that they entered the trailer due to exigent

9

circumstances—specifically, a burglary. Their assessment was not baseless: a screen near the handle of the door was cut in a manner consistent with burglary, and the door was unlocked. Perhaps the deputies' assessment was "misguided" or even "reckless," but that kind of conduct does not give rise to an inference of actual malice under Georgia law. *Marshall*, 712 S.E.2d at 75 (quoting *Todd v. Kelly*, 535 S.E.2d 540, 542 (Ga. Ct. App. 2000)); *Murphy*, 647 S.E.2d at 60. And we decline the Blacks' invitation to "speculate" about the officers' motives or to make "assumptions that simply are not justified by the record, even viewed most favorably to [the Blacks]." *Conley v. Dawson*, 572 S.E.2d 34, 37 (Ga. Ct. App. 2002). Because the Blacks have not raised a genuine dispute of material fact about the presence of actual malice, the deputies are entitled to official immunity as a matter of law.

### B. The Deputies and Investigator Are Entitled to Qualified Immunity from the Claim of Malicious Prosecution.

The Blacks allege that Deputy Kain, Deputy Stamatellos, and Investigator Wilson are liable for malicious prosecution under federal law. To recover for malicious prosecution, a plaintiff must prove "(1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures." *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). The common-law elements include "(1) a criminal prosecution instituted or continued by the present defendant; (2) with malice and

10

without probable cause; (3) that terminated in the plaintiff accused's favor; and (4) caused damage to the plaintiff accused." *Wood v. Kesler*, 323 F.3d 872, 882 (11th Cir. 2003). The officers contend that they are qualifiedly immune from this claim. An officer is entitled to qualified immunity for his discretionary actions unless he violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Case v. Eslinger*, 555 F.3d 1317, 1325 (11th Cir. 2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)).

The officers argue that they did not violate the Blacks' rights for two reasons. First, they contend that the drugs, drug paraphernalia, and clothing from the Blacks' trailer provided probable cause to arrest them. It does not matter whether this evidence was discovered during an illegal search, the officers argue, because the exclusionary rule does not apply in civil cases. Second, the officers argue that causation is lacking because the district attorney, not the officers, made the decision to prosecute the Blacks. We agree with the officers' first argument and need not consider their second argument.

The officers are correct that the presence of probable cause defeats a claim of malicious prosecution. A plaintiff cannot recover for malicious prosecution unless she proves "a violation of her Fourth Amendment right to be free from unreasonable seizures." *Kingsland*, 382 F.3d at 1234. But the illegal seizure cannot

11

be just any seizure: unlike the torts of false arrest and false imprisonment, the tort

of malicious prosecution requires a seizure "pursuant to legal process." *Heck v.*

*Humphrey*, 512 U.S. 477, 484, 114 S. Ct. 2364, 2371 (1994). Legal process

includes an arrest warrant. *See Whiting v. Traylor*, 85 F.3d 581, 585 (11th Cir.

1996). A police officer who applies for an arrest warrant can be liable for

malicious prosecution if he should have known that his application "failed to

establish probable cause," *Kelly v. Curtis*, 21 F.3d 1544, 1553 (11th Cir. 1994)

(quoting *Malley v. Briggs*, 475 U.S. 335, 345, 106 S. Ct. 1092, 1098 (1986)), or if

he made statements or omissions in his application that were material and

"perjurious or recklessly false," *id.* at 1554 (citing *Franks v. Delaware*, 438 U.S.

154, 156, 165–71, 98 S. Ct. 2674, 2676, 2681–84 (1978)). Concomitantly, a police

officer cannot be liable for malicious prosecution if the arrest warrant was

supported by probable cause. *See Wood*, 323 F.3d at 882.

The arrest warrants for the Blacks were plainly supported by probable cause.

"Probable cause" means "facts and circumstances sufficient to warrant a prudent

man in believing that the suspect had committed . . . an offense." *Grider v. City of*

*Auburn*, 618 F.3d 1240, 1257 (11th Cir. 2010) (quoting *Gerstein v. Pugh*, 420 U.S.

103, 111, 95 S. Ct. 854, 862 (1975)). The applications for the arrest warrants listed

the marijuana, drug paraphernalia, and clothing that the officers found in the

Blacks' trailer. This evidence suggested that the Blacks had committed the alleged crimes.

The Blacks argue that the evidence from their trailer could not provide probable cause because it was obtained during an illegal search, but they wrongly assume that the exclusionary rule applies in this civil case. In a *criminal* case, a warrant based on evidence discovered during an illegal search might be invalid as "fruit of the poisonous tree." *See United States v. Karo*, 468 U.S. 705, 719, 104 S. Ct. 3296, 3305–06 (1984). The fruit-of-the-poisonous-tree doctrine is a component of the exclusionary rule. *United States v. Terzado-Madruga*, 897 F.2d 1099, 1112–13 (11th Cir. 1990). But the exclusionary rule is not a "personal constitutional right" or a requirement of the Fourth Amendment; it is a "judicially created remedy" that is meant to prevent violations of the Fourth Amendment "through its deterrent effect." *United States v. Calandra*, 414 U.S. 338, 347–48, 94 S. Ct. 613, 619–20 (1974). Because the exclusionary rule "exacts a heavy toll on both the judicial system and society at large" by "requir[ing] courts to ignore reliable, trustworthy evidence," *Davis v. United States*, __ U.S. __, 131 S. Ct. 2419, 2427 (2011), the rule does not apply unless "its deterrence benefits outweigh its 'substantial social costs,'" *Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 363, 118 S. Ct. 2014, 2019 (1998) (quoting *United States v. Leon*, 468 U.S. 897, 907, 104 S. Ct. 3405, 3412 (1984)). The Supreme Court has never held that the

13

benefits of the exclusionary rule outweigh its costs in a civil case. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1041, 104 S. Ct. 3479, 3485 (1984); *United States v. Janis*, 428 U.S. 433, 447, 96 S. Ct. 3021, 3029 (1976). And our predecessor court has held that the exclusionary rule did not apply in a civil suit against police officers, *see Jonas v. City of Atlanta*, 647 F.2d 580, 587–88 (5th Cir. Unit B June 1981), *abrogated in part on other grounds by Lindsey v. Storey*, 936 F.2d 554 (11th Cir. 1991), although it did not completely foreclose the possibility that the rule could apply in some contexts, *see id.* at 588 n.12. Two of our sister circuits, however, have held that the exclusionary rule and the fruit-of-the-poisonous-tree doctrine never apply in a civil suit against police officers. *See Townes v. City of New York*, 176 F.3d 138, 145 (2d Cir. 1999); *Wren v. Towe*, 130 F.3d 1154, 1158 (5th Cir. 1997).

We now join our sister circuits and hold that the exclusionary rule does not apply in a civil suit against police officers. The cost of applying the exclusionary rule in this context is significant: officers could be forced to pay damages based on an overly truncated version of the evidence. And the deterrence benefits are miniscule. Police officers are already deterred from violating the Fourth Amendment because the evidence that they find during an illegal search or seizure cannot be used in a criminal prosecution—the primary "concern and duty" of the police. *Jonas*, 647 F.2d at 588; *see also Janis*, 428 U.S. at 453, 96 S. Ct. at 3032

14

("If the exclusionary rule is the 'strong medicine' that its proponents claim it to be, then its use [in criminal trials] must be assumed to be a substantial and efficient deterrent."). Moreover, plaintiffs can still sue a police officer for the illegal search or seizure, regardless whether the officers can rely on illegally obtained evidence to defend themselves against other types of claims. This threat of civil liability will adequately deter police officers from violating the Fourth Amendment, whether or not the exclusionary rule applies in civil cases. *See Hudson v. Michigan*, 547 U.S. 586, 597–98, 126 S. Ct. 2159, 2167–68 (2006). The "additional marginal deterrence" of applying the exclusionary rule in this context "would not outweigh the societal cost of excluding relevant evidence and decreasing the possibility of obtaining accurate factual findings." *Jonas*, 647 F.2d at 588. And we see no difference between applying the exclusionary rule and preventing an officer from proving probable cause based on evidence obtained during an illegal search. "Exclusion of the evidence found by [the officers] on the basis that they had no legal right to search the [area] would, in effect, be an application of the exclusionary rule to this case. Such an application would be inappropriate." *Wren*, 130 F.3d at 1158. Accordingly, the officers can rely on the evidence that they found in the Blacks' trailer to prove that the arrest warrants were supported by probable cause.

15

The Blacks complain that the officers forfeited their argument about the inapplicability of the exclusionary rule by not raising it below, but we disagree. In the district court, the officers argued that they had probable cause to arrest the Blacks. The officers' argument about the inapplicability of the exclusionary rule is "not a new claim . . . but a new argument to support what has been [their] consistent claim" that the arrest warrants were supported by probable cause. *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 379, 115 S. Ct. 961, 965 (1995). "Although new claims or issues may not be raised, new *arguments* relating to preserved claims may be reviewed on appeal." *Pugliese v. Pukka Dev., Inc.*, 550 F.3d 1299, 1304 n.3 (11th Cir. 2008). And the parties have fully briefed and argued the question of whether the exclusionary rule applies.

The Blacks' claim of malicious prosecution fails because Deputy Kain, Deputy Stamatellos, and Investigator Wilson are entitled to qualified immunity. The evidence from the Blacks' trailer provided probable cause for the arrest warrants. It does not matter whether that evidence was discovered in compliance with the Fourth Amendment because the exclusionary rule does not apply in a civil suit against police officers.

### C. The Sheriff Is Not Entitled to Sovereign Immunity from the Claim under Title II of the Disabilities Act.

The sheriff contends that he is entitled to sovereign immunity from the Blacks' claim that the sheriff, as the head of the Rockdale County Jail,

16

discriminated against Ernest by denying him the same privileges as able-bodied inmates. Title II of the Disabilities Act prohibits a "public entity" from denying "services, programs, or activities" to a person on account of his disability. 42 U.S.C. § 12132. The sheriff is an "arm of the State" when he acts in his official capacity as the head of the Rockdale County Jail, *Purcell ex rel. Estate of Morgan v. Toombs Cty.*, 400 F.3d 1313, 1325 (11th Cir. 2005), and the Eleventh Amendment ordinarily prohibits a citizen from suing an arm of the state in federal court, *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S. Ct. 1347, 1355 (1974).

The Blacks contend that Congress abrogated the states' sovereign immunity for conduct that violates both Title II and the Equal Protection Clause. The sheriff does not dispute that such a claim *could* abrogate sovereign immunity, but he argues that no abrogation occurred here because the Blacks' argument that the sheriff violated the Equal Protection Clause cannot withstand summary judgment. The Blacks respond that their argument does withstand summary judgment, and they contend, in the alternative, that their argument does not need to satisfy the standard for summary judgment to defeat sovereign immunity. We agree with the Blacks' alternative contention.

The parties are correct that Congress abrogated sovereign immunity for conduct that simultaneously violates Title II and the Equal Protection Clause. Congress can abrogate the states' sovereign immunity if it "unequivocally intends

17

to do so" and "act[s] pursuant to a valid grant of constitutional authority." *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363, 121 S. Ct. 955, 962 (2001) (alteration in original) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73, 120 S. Ct. 631, 640 (2000)). The Disabilities Act unequivocally expresses an intent to abrogate sovereign immunity. *Tennessee v. Lane*, 541 U.S. 509, 518, 124 S. Ct. 1978, 1985 (2004). The statute states that "[a] State shall not be immune under the eleventh amendment . . . for a violation of th[e Act]." 42 U.S.C. § 12202. This abrogation is a valid exercise of Congress's authority under section 5 of the Fourteenth Amendment when a plaintiff complains about conduct that violates both Title II and the Fourteenth Amendment. *United States v. Georgia*, 546 U.S. at 159, 126 S. Ct. at 882. And the Blacks argue that the sheriff's conduct violated the "prohibition on irrational disability discrimination" embodied by the Equal Protection Clause of the Fourteenth Amendment. *Lane*, 541 U.S. at 522, 124 S. Ct. at 1988.

Sheriff Wigington contends that sovereign immunity is not abrogated here because the Blacks' constitutional argument cannot survive summary judgment, but the sheriff conflates sovereign immunity with the merits. Sovereign immunity is a question of jurisdiction, *see McClendon v. Ga. Dep't of Cmty. Health*, 261 F.3d 1252, 1256–57 (11th Cir. 2001), and "[j]urisdiction . . . is not defeated . . . by the possibility that the averments might fail to state a cause of action on which [the

18

plaintiffs] could actually recover," *Bell v. Hood*, 327 U.S. 678, 682, 66 S. Ct. 773, 776 (1946). When a plaintiff argues that Congress has abrogated sovereign immunity for a particular type of claim, we review that argument *de novo*. *Nat'l Ass'n of Bds. of Pharmacy*, 633 F.3d at 1313. If we conclude that Congress abrogated sovereign immunity for that type of claim, a plaintiff who alleges that type of claim has successfully invoked our jurisdiction unless his allegations are "immaterial and made solely for purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous." *Blue Cross & Blue Shield of Ala. v. Sanders*, 138 F.3d 1347, 1352 (11th Cir. 1998) (quoting *Bell*, 327 U.S. at 682–83, 66 S. Ct. at 776); *see also In re Deposit Ins. Agency*, 482 F.3d 612, 623 (2d Cir. 2007) (applying this standard in the context of sovereign immunity). This standard is a "low bar." *Shapiro v. McManus*, __ U.S. __, 136 S. Ct. 450, 456 (2015). And the Blacks' claim easily satisfies it: their argument under the Equal Protection Clause is not wholly insubstantial or frivolous because it has a "plausible foundation" and is not "clearly foreclose[d]" by a prior decision of the Supreme Court. *Sanders*, 138 F.3d at 1352 (quoting *Barnett v. Bailey*, 956 F.2d 1036, 1041 (11th Cir. 1992)). Accordingly, the sheriff is not entitled to sovereign immunity, whether or not the Blacks' argument under the Equal Protection Clause should have been dismissed at summary judgment.

19

Indeed, we *cannot* consider whether the Blacks' argument survives summary judgment without exceeding the scope of our interlocutory jurisdiction. Under the collateral order doctrine, we have jurisdiction to consider the denial of sovereign immunity on interlocutory appeal. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 147, 113 S. Ct. 684, 689 (1993). The only question of sovereign immunity in this appeal is whether Congress abrogated sovereign immunity when a plaintiff alleges a simultaneous violation of Title II and the Equal Protection Clause—a question we reviewed *de novo* and easily answered in the affirmative, *see United States v. Georgia*, 546 U.S. at 159, 126 S. Ct. at 882. The sheriff's argument that he did not *actually* violate the Equal Protection Clause is not a question of immunity because the Blacks' argument to the contrary is not "immaterial and made solely for the purpose of obtaining jurisdiction" or "wholly insubstantial and frivolous." *Bell*, 327 U.S. at 682–83, 66 S. Ct. at 776.

Although we sometimes exercise "pendent appellate jurisdiction" to review "nonappealable decisions of the district court when [we] already ha[ve] jurisdiction over one issue in the case," *Stewart v. Baldwin Cty. Bd. of Educ.*, 908 F.2d 1499, 1509 (11th Cir. 1990), we cannot exercise that jurisdiction here. We can exercise pendent appellate jurisdiction "only under rare circumstances." *King v. Cessna Aircraft Co.*, 562 F.3d 1374, 1379 (11th Cir. 2009). It is not available unless the nonappealable issue is "inextricably intertwined" with or "necessary to ensure

20

meaningful review" of the appealable issue. *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1335 (11th Cir. 1999) (quoting *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 51, 115 S. Ct. 1203, 1212 (1995)). And "we may resolve the Eleventh Amendment immunity issue here without reaching the merits of" the Blacks' argument under the Equal Protection Clause. *Id.* We can decide whether Congress abrogated the sheriff's sovereign immunity (it did) and whether the sheriff's conduct plausibly violated the Equal Protection Clause (it did) "[w]ithout expressing any view on the merits" of the Blacks' argument. *Shapiro*, 136 S. Ct. at 456. So, we lack jurisdiction to review whether the Blacks' argument that the sheriff violated the Equal Protection Clause should have been dismissed at summary judgment and express no view on this issue.

## IV. CONCLUSION

We **REVERSE** the denial of official immunity to Deputies Kain and Stamatellos and **RENDER** judgment in their favor on the claim of trespass. We **REVERSE** the denial of qualified immunity to Deputy Kain, Deputy Stamatellos, and Investigator Wilson and **RENDER** judgment in their favor on the claim of malicious prosecution. We **AFFIRM** the denial of sovereign immunity to Sheriff Wigington with respect to the alleged violation of Title II of the Disabilities Act and **REMAND** this claim for further proceedings.