[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11360

Non-Argument Calendar

_____

LAJUAN RAYSHARD KINNEMORE,

                                        Plaintiff-Appellant,

*versus*

THOMAS COCHRAN,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 4:19-cv-00281-WMR

_____

Before WILLIAM PRYOR, Chief Judge, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

Lajuan Kinnemore appeals the summary judgment against his second amended complaint of malicious prosecution by Thomas Cochran, a detective in the Sheriff's Office of Paulding County, Georgia. *See* 42 U.S.C. § 1983. The district court ruled that Detective Cochran was entitled to qualified immunity. We affirm.

## I. BACKGROUND

On November 23, 2017, the Dallas Police Department dispatched an officer to the Kinnemore home in Dallas, Georgia. The officer observed Kinnemore's wife, Amanda, "breathing heavily and crying hysterically," "bleeding from the bridge of her nose," and bearing "red marks on her arms, shoulders, and backs of her shoulders." Amanda described a "verbal altercation that turned physical" with Kinnemore during which he threatened to kill her while holding a loaded gun to her head, interrupted her telephone call to 911, threw his cellular telephone at her, and snatched their two-year-old daughter while warning that he would make any police officer "kill him or vice versa." Kinnemore contacted 911, but after he broke his promise to appear at the police station, officers obtained a warrant to arrest him for aggravated assault, battery, and cruelty to a child. Kinnemore also contacted his wife at the hospital while she was receiving

treatment for a fractured nose and occidental bone and other injuries. Later, Kinnemore released his daughter and surrendered to the police.

On November 28, 2017, Amanda obtained a temporary protective order against Kinnemore. *See* O.C.G.A. § 19-13-3. The order "enjoined and restrained [Kinnemore] from doing, attempting to do, or threatening to do, any act of . . . harassing . . . [Amanda] and/or the minor child[] in any manner" and from "harassing . . . the family or household." The order also barred Kinnemore from "contact[ing] [Amanda] at any place . . . for the purpose of harassing or intimidating [her]."

The same day, Kinnemore was released on bond. The terms of his bond allowed him one visit to the family home accompanied by law enforcement to collect his belongings. Officers served Kinnemore with the protective order as he left the jail.

On November 29, 2017, Kinnemore photographed the Entry of Service on the protective order. He logged into his iCloud account and uploaded the photograph to his account. He next logged into the family iCloud account, shared the photograph with his wife and daughter, and then removed himself from the family account.

Amanda reported Kinnemore's conduct to the Paulding County Sheriff's Office. When Detective Cochran interviewed Amanda, she "appear[ed] to be very scared" and stated that she was "in fear for her life." Amanda showed the detective

screenshots of her cellular telephone that showed the photograph Kinnemore had sent and two notifications she had received that Kinnemore had shared the photograph using the family iCloud account and that he had left the account. Amanda also showed the detective a screenshot showing the different appearance of the family iCloud account while Kinnemore was a member and after he removed himself from the account.

During her interview, Amanda reported more harassment by Kinnemore and his family. She stated that, after Kinnemore contacted her through iCloud, he made an unscheduled visit to their home around 10 p.m. accompanied by officers of the Dallas Police Department to collect his car and clothes. She also stated that Kinnemore's father, cousin, and brother later attempted to send her messages through Facebook, but she blocked all conversations with them. Amanda provided the detective screenshots of the messages from Kinnemore's family.

Based on Amanda's interview, and after reviewing her hospital records and information regarding Kinnemore's arrest, Detective Cochran applied for a warrant to arrest Kinnemore for aggravated stalking. *See* O.C.G.A. § 16-5-91(a). The application stated that Kinnemore had "knowingly, willfully, without consent and with the purpose of harassing and intimidating Amanda . . ., contact[ed] [her] in violation of Family Violence Ex Parte Protective Order ordered by Judge Dean Bucci, Superior Court of Paulding County on November 28, 2017." The detective alleged that "Kinnemore did take a picture of the Sheriff's Entry Of Service

form for which [he] was served a Family Violence Ex Parte Protective Order on 11/28/2017 under Civil Action Number 17-CV-2906-P3"; he "uploaded the picture to an Apple iCloud under his account and then shared the picture on 11/29/2017 to . . . Amanda Kinnemore's iCloud family account so that she would receive a copy of the picture"; and he "then removed himself from the family iCloud account."

Detective Cochran obtained a warrant to arrest Kinnemore, which deputy sheriffs executed. Later, the state moved to revoke Kinnemore's bond.

Judge Bucci held a preliminary hearing and modified Kinnemore's bond. The judge found that probable cause existed to arrest Kinnemore for aggravated stalking and, although his subsequent trip home did not violate his bond, "add[ing] conditions" to "the bond [would] make [his wife] feel a little more secure." The new conditions "barred [Kinnemore] from entering Paulding County, Georgia," except to handle legal matters, and from having any "contact, direct or indirect," with his wife and daughter.

After the dismissal of his criminal warrant, Kinnemore filed a second amended complaint that alleged a violation of "the Fourth and Fourteenth Amendments for [the] illegal arrest of [his] person and his malicious prosecution." *See* 42 U.S.C. § 1983. Kinnemore alleged that Detective Cochran "secured a warrant . . . for aggravated stalking . . . [that] falsely and deliberately or with a reckless disregard for the accuracy of the affidavit omitt[ed]" the

terms of Kinnemore's bond that "allowed [him] to return to his residence once with a police escort."

Kinnemore moved for partial summary judgment, and Detective Cochran moved for summary judgment. The detective asserted the defense of qualified immunity. The detective argued that he had probable cause, or at least arguable probable cause, to arrest Kinnemore for aggravated stalking; that he acted without malice; and that Kinnemore's allegation regarding his bond was "completely irrelevant to [the] warrant application" and did not state a claim for relief under the Fourth Amendment.

The district court granted Detective Cochran's motion for summary judgment and denied Kinnemore's motion for partial summary judgment.  The district court ruled that the detective was immune from suit because "a reasonable officer in [his] position could have determined that [Kinnemore] exhibited a pattern of harassing behavior," based on his wife's report and their history, to provide at least arguable probable cause to arrest him for aggravated stalking. The district court rejected Kinnemore's arguments that the offense of aggravated stalking required two or more violations of the protective order and that the application for his arrest warrant was deficient.

## II. STANDARD OF REVIEW

"We review *de novo* whether . . . [law enforcement] officers are entitled to immunity." *Black v. Wigington*, 811 F.3d 1259, 1265 (11th Cir. 2016). Because Detective Cochran raised qualified

immunity in his motion for summary judgment, he "should prevail if there is 'no genuine dispute as to any material fact' and [he is] entitled to immunity 'as a matter of law.'" *Id.* (quoting Federal Rule of Civil Procedure 56(a)). We resolve any issues of material fact in Kinnemore's favor and then address the legal question whether Detective Cochran is entitled to qualified immunity using that version of the facts. *See Penley v. Eslinger*, 605 F.3d 843, 848–49 (11th Cir. 2010).

## III. DISCUSSION

Kinnemore contends that he was unreasonably seized in violation of the Fourth Amendment when he was maliciously prosecuted by Detective Cochran. Kinnemore argues that the warrant application is facially insufficient to establish probable cause for aggravated stalking and that he is entitled to partial summary judgment. Alternatively, Kinnemore argues that a jury could find that he did not send the photograph to his wife.

Qualified immunity shields government officials who are acting within their discretionary authority from liability when their conduct does not violate a federal statutory or constitutional right that was clearly established at the time of the challenged action. *Williams v. Aguirre*, 965 F.3d 1147, 1156 (11th Cir. 2020). If the official is acting within the scope of his discretionary authority when he commits the allegedly unlawful actions, the plaintiff must prove "that qualified immunity is not appropriate." *Penley*, 605 F.3d at 849 (quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002)). "We are required to grant qualified immunity to a

defendant official unless the plaintiff can demonstrate two things: (1) that the facts, when construed in the plaintiff's favor, show that the official committed a constitutional violation and, if so, (2) that the law, at the time of the official's act, clearly established the unconstitutionality of that conduct." *Singletary v. Vargas*, 804 F.3d 1174, 1180 (11th Cir. 2015). Because Kinnemore does not dispute that Detective Cochran was acting within his discretionary authority when he applied for the arrest warrant, this appeal turns on whether he is entitled to qualified immunity. *See id.*

For Kinnemore to defeat Detective Cochran's claim of qualified immunity, he "must prove that he suffered a seizure pursuant to legal process that violated the Fourth Amendment, and satisfy the elements of the common law tort of malicious prosecution." *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020) (internal quotation marks and citations omitted). Because a claim of "[m]alicious prosecution . . . requires a seizure pursuant to legal process," *Aguirre*, 965 F.3d at 1158, Kinnemore must "prove that his arrest warrant was constitutionally infirm," *id.* at 1165. To invalidate his arrest warrant, Kinnemore must "establish[] either that [Detective Cochran] should have known that his application failed to establish probable cause or that [he] intentionally or recklessly made misstatements or omissions necessary to support the warrant." *See id.* (internal citations omitted).

Detective Cochran's warrant application established probable cause to arrest Kinnemore for aggravated assault. "Probable cause . . . is established when the facts and circumstances . . .

would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Paez v. Mulvey*, 915 F.3d 1276, 1285 (11th Cir. 2019) (internal quotation marks omitted). In Georgia, a person commits aggravated stalking when, "in violation of a . . . temporary protective order, . . . [he] contacts another person . . . without the consent of the other person for the purpose of harassing and intimidating [that] person." O.C.G.A. § 16-5-91(a). The application established that the protective order prohibited Kinnemore from contacting his wife and that he violated the order when he sent his wife a photograph through their family iCloud account without her consent. *See id.* § 16-5-90(a)(1) (defining "contact" as "any communication including without being limited to communication . . . by computer network or by any other electronic device"); *Jones v. State*, 521 S.E.2d 883, 885 (Ga. Ct. App. 1999) ("Contact, in [the] context [of aggravated stalking], means to get in touch with or to communicate with."). The application also established that Kinnemore contacted his wife to harass her and to intimidate her by communicating implicitly that their hostilities would continue. That Kinnemore sent no message with the photograph does not matter because "[o]vert threats of bodily harm are not required" for aggravated stalking. *See Frilando v. State*, 858 S.E.2d 525, 529 (Ga. Ct. App. 2021).

Kinnemore argues that the application failed to establish that he contacted his wife as part of a pattern of behavior intended to harass and intimidate her, but we disagree. Aggravated

stalking occurs when contact in violation of a protective order occurs as part of "a pattern of harassing and intimidating behavior" against the victim "which serves no legitimate purpose." *See* O.C.G.A. § 16-5-90(a)(1) (defining "harassing and intimidating"); *State v. Cusack*, 769 S.E.2d 370, 373 (Ga. 2015); *Louisyr v. State*, 706 S.E.2d 114, 118 (Ga. 2011). The pattern can emerge from "a number of factors, including the prior history between the parties, the defendant's surreptitious conduct, as well as his overtly confrontational acts, and any attempts by the defendant to contact, communicate with, or control the victim indirectly . . . ." *Louisyr*, 706 S.E.2d at 118. To determine "whether the facts set forth in an affidavit constitute a sufficient basis for a finding of probable cause," "[w]e must . . . give due weight to inferences drawn from . . . facts by resident judges . . . ." *United States v. Lopez*, 649 F.3d 1222, 1245 (11th Cir. 2011) (internal quotation marks omitted). A prudent judge could deduce from the facts in the application that Kinnemore sent the photograph as a successive act in a pattern of harassing and intimidating behavior that had resulted in the issuance of the protective order.

"[T]hat a neutral magistrate . . . issued [the] warrant" is not dispositive of the existence of probable cause, but it is "the clearest indication that [Detective Cochran] acted . . . in objective good faith" and "held a reasonable belief that the warrant [application] was supported by probable cause." *Messerschmidt v. Millender*, 565 U.S. 535, 547, 555 (2012). Both a magistrate judge and a judge of the Superior Court of Paulding County found probable cause

to arrest Kinnemore for aggravated assault. *See United States v. Leon*, 468 U.S. 897, 914 (1984) (giving "great deference" to a judge's determination that an affidavit establishes probable cause). Like those judges, Detective Cochran could have reasonably thought that his warrant application provided probable cause to arrest Kinnemore. *See Aguirre*, 965 F.3d at 1165.

Kinnemore argues that his arrest warrant was void under the Fourth Amendment because Detective Cochran omitted from his application that the "contact at the house consisted of [Kinnemore] being escorted by a police officer." But "even intentional or reckless omissions will invalidate a warrant only if inclusion of the omitted facts would have prevented a finding of probable cause." *Madiwale v. Savaiko*, 117 F.3d 1321, 1327 (11th Cir. 1997). As Detective Cochran argued in his motion for summary judgment, Kinnemore's visit home after being served with the protective order was irrelevant to the existence of probable cause for the criminal warrant. That charge of aggravated stalking was predicated on Kinnemore's contact with his wife in violation of a court order to harass and intimidate her. Because the omission of facts regarding Kinnemore's visit was "insignificant and immaterial, . . . [that omission does] not invalidate [Kinnemore's arrest] warrant." *See id.* at 1327.

The district court did not err by entering summary judgment in favor of Detective Cochran. The detective's warrant application established probable cause to arrest Kinnemore for

aggravated stalking. *See Wigington*, 811 F.3d at 1267. Detective Cochran was entitled to qualified immunity.

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of Detective Cochran.