[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10819

Non-Argument Calendar

_____

CHARLES LAWN,

Plaintiff-Appellant,

*versus*

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, et al.,

Defendants,

ATTORNEY GENERAL, STATE OF FLORIDA,
SGT. SCHUTHIESS,
Martin C.I.,
OFFICER HARVEY,

2                    Opinion of the Court                    21-10819

Martin C.I.,

                                                    Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:17-cv-14249-RLR

_____

Before WILLIAM PRYOR, Chief Judge, and NEWSOM and BRASHER,
Circuit Judges.

PER CURIAM:

Charles Lawn, a Florida prisoner, appeals the summary judgment in favor of two correctional officers, Sergeant Schultheiss and Officer Harvey, and against Lawn's complaint that they used excessive force in violation of the Eighth Amendment when restraining Lawn while he was having a seizure. 42 U.S.C. § 1983. The district court ruled that the officers were entitled to qualified immunity because the undisputed record established that the officers, acting within their discretionary authority, restrained Lawn because they perceived he was under the influence of drugs and that the force they used was not applied maliciously or sadistically to cause harm. We affirm.

# I. BACKGROUND

For decades, Lawn has experienced seizures due to a traumatic brain injury. On July 9, 2015, Lawn was in his cell when he began to experience one of these seizures and informed his cellmate, who called for help. When Sergeant Schultheiss and Officer Harvey arrived with other prison and medical staff, Lawn was convulsing on the floor. Lawn was transported to the prison medical unit, where his medical record listed "drug abuse" as the chief complaint and noted that Lawn appeared confused and delirious, his pupils were dilated, and he was "physically combative." An x-ray revealed that Lawn's right shoulder was dislocated and his right arm was fractured.

Lawn later filed a complaint against Sergeant "Schuthiess" and Officer Harvey. Lawn alleged that, instead of assisting him, the officers "began to kick, stomp, punch and curse him" before transporting him to the medical unit, where the officers continued to beat and curse him. Lawn alleged that the officers used excessive force in violation of the Eighth Amendment.

In his first deposition, Lawn denied that the officers ever punched or kicked him. Lawn testified that after he began seizing and "flopping around like a fish," the officers "jumped" on him and held him down using their arms to immobilize his neck. Lawn recalled hearing the officers ask him if he was high and what he had been smoking. Lawn believed that the officers "thought [he] was on drugs at the time," and "jumped down on [him], instead, thinking that [he] was trying to be [] unruly, and that [he] was high."

Lawn stated that the officers rolled him onto his stomach, hand-cuffed him, and placed him on a gurney. When he woke up in the medical unit, the captain told Lawn that "Schultheiss and the other officer had to jump down on you . . . because they thought you were high." When Lawn explained to the captain that he was not on drugs but had experienced a seizure, the captain instructed that Lawn be uncuffed.

Two years later, after the district court denied Sergeant Schultheiss's motion for summary judgment, Lawn was deposed again. Lawn maintained his previous assertions and added that the drug "K2" was "everywhere." Lawn had seen officers try to control inmates who were high on K2 by trying to "talk the [inmate] down," but if that did not work, the officers had "to grab them," cuff them, and put them on a gurney. During his seizure, Lawn recalled hearing the officers asking what he "was on" and hearing "some of the other inmates telling them that [he] was taking a seizure." Lawn acknowledged that if he had been high and unable control himself, the proper way to restrain him would be to take him down. Lawn explained that he ordinarily wore a pass in his left pocket that stated "SZ precautions," meaning that he could not be around certain items and chemicals due to his seizures. Lawn never had any problems with Sergeant Schultheiss or Officer Harvey before the incident.

Officer Harvey moved for summary judgment, and Sergeant Schultheiss moved for reconsideration because of the additional discovery that had occurred since he filed his motion for

summary judgment two years earlier. The officers submitted declarations averring they had no independent recollection of the incident and never used excessive force on Lawn. Both officers described their encounters with inmates who had ingested K2, which involved screaming, twitching, shaking, and fighting. When the officers encountered an inmate who appeared to be under the influence of drugs, they would try to calm the inmate down. But if the inmate did not respond to commands or was combative, the officers had to secure the inmate with handcuffs so that medical staff could respond safely. Inmates would sometimes misstate what was happening or lie to create a diversion, so correctional officers could never be certain about what was happening.

The district court granted the officers summary judgment. The district court ruled that there was no evidence that the officers used force against Lawn maliciously and sadistically for the purpose of causing him harm. Instead, the district court ruled, the evidence established that the officers used force to gain control of Lawn while he was experiencing what appeared to be a drug high so he could be transported to the medical unit. The district court further ruled that the officers were entitled to qualified immunity because they were acting within their discretionary authority while supervising inmates and maintaining safety and security.

## II. STANDARD OF REVIEW

We review *de novo* a summary judgment. *See Underwood v. City of Bessemer*, 11 F.4th 1317, 1327 (11th Cir. 2021). And "[w]e review *de novo* whether . . . officers are entitled to immunity."

*Black v. Wigington*, 811 F.3d 1259, 1265 (11th Cir. 2016). We resolve any issues of material fact in Lawn's favor and then address the legal question of whether the officers are entitled to qualified immunity using that version of the facts. *See Penley v. Eslinger*, 605 F.3d 843, 848-49 (11th Cir. 2010).

### III. DISCUSSION

Lawn argues that the officers violated the Eighth Amendment by using excessive force against him. Lawn contends that the officers acted maliciously and sadistically when they jumped on him and beat him for no reason after other inmates told the officers that Lawn was not on drugs. We disagree.

Under the doctrine of qualified immunity, if the officers establish that they were acting within the scope of their discretionary authority when the alleged excessive force occurred, Lawn must prove both that a constitutional violation occurred and that the constitutional right violated was clearly established. *Williams v. Aguirre*, 965 F.3d 1147, 1156 (11th Cir. 2020). And "[f]or claims of excessive force in violation of the Eighth . . . Amendment[], . . . a plaintiff can overcome a defense of qualified immunity by showing only the first prong." *Fennell v. Gilstrap*, 559 F.3d 1212, 1216-17 (11th Cir. 2009); *see Patel v. Lanier Cnty.*, 969 F.3d 1173, 1186 (11th Cir. 2020) (holding that the *Fennell* "exception continues to apply to Eighth Amendment claims").

Because Lawn did not dispute that the officers were acting within their discretionary authority until his reply brief, that issue

21-10819                Opinion of the Court                7

is not properly before us. *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681, 683 (11th Cir. 2014). This appeal turns on whether Lawn proved that the officers are not entitled to qualified immunity. *See Williams*, 965 F.3d at 1156-57. He has not.

The "core judicial inquiry" in excessive force cases, under the Eighth Amendment, is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quotation marks omitted). To determine whether the force was applied maliciously and sadistically to cause harm, we consider the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury inflicted upon the prisoner, the extent of the threat to the safety of staff and inmates, and any efforts made to temper the severity of a forceful response. *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007). When considering these factors, "we must also give a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance." *Sears v. Roberts*, 922 F.3d 1199, 1205 (11th Cir. 2019).

Viewing the evidence in the light most favorable to Lawn, no reasonable jury could find that the force used was "not applied in a good-faith effort to maintain or restore discipline" but instead applied "maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37. Lawn's testimony alone is sufficient to prove that the

officers' actions of jumping on him, restraining him, and handcuffing him was a result of their honest but mistaken belief that he was convulsing and being "unruly" due to a drug high. And the amount of force appeared to be reasonably necessary as Lawn testified that he was "flopping around like a fish." It is also undisputed that the officers' reason for restraining and cuffing Lawn was to transport him for medical treatment. *See Cockrell*, 510 F.3d at 1312.

The undisputed evidence also establishes that, from the officers' perspective and their experience with inmates' rampant drug use, Lawn posed a security threat and needed to be restrained. Although the officers reported no recollection of the incident and Lawn testified that he had blacked out for parts of it, his medical records reflected that he was confused, delirious, and "physically combative." And our conclusion is unaffected by whether the officers were told, as Lawn alleged they were, that he was experiencing a seizure and not a drug high. Maintaining "safety and order at [corrections facilities] requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face." *Ireland v. Prummell*, 53 F.4th 1274, 1299 (11th Cir. 2022) (alteration in original).

Lawn argues that the officers should have tempered the amount of force used. But the infliction of pain "does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Because the

evidence, construed in Lawn's favor, does not establish that the officers committed a constitutional violation, the district court did not err in granting them qualified immunity.

Lawn argues too that the district court erred in allowing Sergeant Schultheiss to file a successive motion for summary judgment, but we discern no error. Although Federal Rule of Civil Procedure 56 is silent regarding whether a party may file a successive motion for summary judgment, we have recognized that a successive motion for summary judgment may be permitted when good cause exists, such as when discovery has been extended. *Fernandez v. Bankers Nat. Life Ins. Co.*, 906 F.2d 559, 569 (11th Cir. 1990). Because Lawn's allegations against the two officers were identical and the factual record had been further developed, the district court identified good cause to permit Sergeant Schultheiss to file a second motion for summary judgment.

## IV. CONCLUSION

We **AFFIRM** the summary judgment in favor of Sergeant Schultheiss and Officer Harvey.