[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 23-13632

Non-Argument Calendar

_____

TARAN BLACK,

Plaintiff-Appellant,

*versus*

NOAH I. DUFOUR,
Individually as an Officer of the Pensacola
Police Department,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Florida

D.C. Docket No. 3:22-cv-24175-MCR-ZCB

_____

Before WILLIAM PRYOR, Chief Judge, and WILSON and LUCK, Circuit Judges.

PER CURIAM:

Taran Black appeals *pro se* the dismissal of his amended complaint alleging that police officer Noah Dufour violated his Fourth Amendment rights by falsely arresting him for a seatbelt violation and using excessive force to effect his unlawful arrest. 42 U.S.C. § 1983. The district court dismissed the complaint based on qualified immunity. We affirm.

In his counseled amended complaint, Black alleged that Dufour stopped him, a black man driving a late-model sedan, for a "supposed" seatbelt violation. Black alleged that video footage from Dufour's patrol car established that Dufour had no reason to stop him because he "had to pull off his seatbelt to get out of the car." Black alleged that the video also showed that Dufour held him at gunpoint, handcuffed him, and searched him because of his race, the neighborhood he was in, and the type of vehicle he was driving. Black alleged that after a traffic hearing on the seatbelt violation, he was found not guilty.

Black attached a video of the incident recorded by a camera on Dufour's patrol car. The video showed Black's sedan exit a parking lot and make a right turn into the left lane of the main road on which Dufour was traveling. The sedan then turned left onto a

residential road, and Dufour followed. A few seconds later, Dufour activated the lights on his patrol car to initiate a traffic stop. Black did not stop. Instead, he continued for about 60 seconds by driving a few blocks, taking a left turn at a stop sign, driving another block, taking a right turn at another stop sign, before driving the full length of that block, at which point he pulled over. After Black stopped, Dufour approached the sedan with his gun drawn. Black opened the door, put his hands up, and knelt on the ground. Meanwhile, Dufour kept his gun drawn and pointed at Black's head. Once Black placed his hands on the back of his head, Dufour placed his gun in its holster and stepped forward to handcuff Black. Dufour then walked Black to the front of the patrol car. A few minutes later, two officers arrived. Black waited for approximately 19 minutes without incident. Eventually, Dufour removed the handcuffs. Black retrieved some papers from his car and sat in the driver's seat of his car while he continued speaking with Dufour for several minutes until the video ends. Dufour issued Black a citation for a seatbelt violation.

Black attached the transcript from the traffic hearing. Dufour testified that the incident happened in the afternoon and that he could see through the rear window of Black's sedan that he was not wearing a seatbelt, so Dufour initiated a traffic stop. Dufour saw Black put his seatbelt on after he activated his patrol lights. Dufour maintained that Black was not wearing his seatbelt when he initiated the stop and that the video confirmed that there was "no triangle" where the seatbelt should have visible. Captain James Reese testified that when Black later filed a complaint about

the incident, he showed Black screenshots of the video that revealed that his shoulder strap was not visible through the rear window. Reese testified that Black said that he "had the belt on" but "was leaning towards his left with his left arm, and his shoulder strap was actually pushed down."

Black testified that he was wearing his seatbelt when Dufour stopped him but admitted that he sometimes wore his seatbelt improperly. He also explained that when Dufour initiated his patrol lights and siren, he did not realize that Dufour was initiating a traffic stop. Although the hearing officer stated that he remembered seeing on the video "that it [did not] appear [Black] was wearing his seatbelt at first," he found Black not guilty of the violation.

Dufour moved to dismiss the amended complaint based on qualified immunity. He argued that he had probable cause to initiate the traffic stop based on the observed seatbelt violation and to detain Black for committing the elements of fleeing or attempting to elude an officer. Fla. Stat. § 316.1935. He asserted that he approached the sedan with his gun drawn and handcuffed Black because he did not know why Black continued driving for several blocks after Dufour activated his patrol lights. Dufour attached screenshots of the video, which appear to show that the shoulder strap of Black's seatbelt was not visible through the rear window of his sedan until about three seconds after Dufour activated his patrol lights, after which the shoulder strap becomes visible for the first time. Dufour also attached a map of the residential area through which Black traveled. Black responded and moved for

summary judgment. He disputed that probable cause existed for the traffic stop or his detention because the video revealed that he was wearing his seatbelt and that he "never attempted to flee."

The district court granted Dufour's motion to dismiss and denied Black's motion for summary judgment as moot. It ruled that Dufour was entitled to qualified immunity because probable cause supported the arrest. It found that, although it was unclear from the video whether Black was wearing his seatbelt properly when Dufour initiated the traffic stop,[1] there was probable cause to arrest Black because a reasonable officer could have concluded that he committed the offense of fleeing or attempting to elude an officer, Fla. Stat. § 316.1935(1), by continuing to drive for 60 seconds after the officer activated his patrol lights and siren. The district court also ruled that, because his claim of excessive force was based on the allegation that "[n]o force at all was authorized or necessary to be used against" him, his claim of excessive force was "entirely derivative" of his claim of false arrest.

We review *de novo* the dismissal of Black's amended complaint. *Turner v. Williams*, 65 F.4th 564, 577 (11th Cir. 2023). "We review *de novo* whether . . . [law enforcement] officers are entitled to immunity." *Black v. Wigington*, 811 F.3d 1259, 1265 (11th Cir. 2016).

Qualified immunity shields officials who are acting within their discretionary authority from liability when their conduct does

---

[1] A safety belt usage violation is a civil infraction. *See* Fla. Stat. § 316.614.

not violate a constitutional right that was clearly established at the time of the conduct. *Williams v. Aguirre*, 965 F.3d 1147, 1156 (11th Cir. 2020). "We are required to grant qualified immunity to a defendant official" who was acting within his discretionary authority unless the plaintiff can prove "(1) that the facts, when construed in the plaintiff's favor, show that the official committed a constitutional violation and, if so, (2) that the law, at the time of the official's act, clearly established the unconstitutionality of that conduct." *Singletary v. Vargas*, 804 F.3d 1174, 1180 (11th Cir. 2015).

A warrantless arrest must be supported by probable cause to believe that the suspect committed a crime. *See Huebner v. Bradshaw*, 935 F.3d 1183, 1187 (11th Cir. 2019). "Probable cause exists when the facts, considering the totality of the circumstances and viewed from the perspective of a reasonable officer, establish 'a probability or substantial chance of criminal activity.'" *Washington v. Howard*, 25 F.4th 891, 898–99 (11th Cir. 2022) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)). To determine whether probable cause exists, we ask "whether a reasonable officer *could* conclude . . . that there was a substantial chance of criminal activity." *Id.* at 899 (omission in original).

Florida law makes a driver's refusal to stop after being ordered to do so by a police officer a criminal offense:

> It is unlawful for the operator of any vehicle, having knowledge that he or she has been ordered to stop such vehicle by a duly authorized law enforcement officer, willfully to refuse or fail to stop the vehicle in compliance with such order or, having stopped in

> knowing compliance with such order, willfully to
> flee in an attempt to elude the officer . . . .

Fla. Stat. § 316.1935(1). Section 316.1935(3) provides enhanced criminal penalties for fleeing or attempting to elude an officer by driving "at high speed." *Id*. § 316.1935(3).

The district court did not err in granting Dufour qualified immunity. Probable cause supported his decision to arrest Black because a reasonable officer could have concluded that Black committed the third-degree felony offense of refusing or failing to stop his vehicle for an officer. *Huebner*, 935 F.3d at 1187; Fla. Stat. § 316.1935(1). Indeed, a reasonable officer could have concluded from observing Black continue to drive for 60 seconds down four residential blocks after the officer activated his patrol lights and siren and followed Black, with no other cars around them, that Black knew that he was being ordered to stop and willfully refused to stop.

Black does not dispute that he continued to drive for 60 seconds after Dufour initiated a traffic stop. Instead, he argues that Dufour had no probable cause to believe he was fleeing or attempting to elude an officer because he did not drive erratically or increase his speed. But we have explained that probable cause for this offense does not require a high-speed chase or erratic driving. *See Manners v. Cannella*, 891 F.3d 959, 970 (11th Cir. 2018) (holding that a driver failing to stop his vehicle for 14.4 seconds over three blocks after the officer activated his lights and siren provided probable cause to arrest the driver for violating section 316.1935(1)); *see also*

Fla. Stat. § 316.1935(3) (providing for *enhanced* penalties for fleeing or attempting to elude an officer by driving "at high speed"). Black also argues that he did so because he wanted to park in a location where he felt "comfortable." Nevertheless, because the facts known to Dufour could have led a reasonable officer to conclude that Black committed the offense of willfully refusing or failing to stop his vehicle, Dufour had probable cause for the arrest and was entitled to qualified immunity. *See Washington*, 25 F.4th at 898–99; *Williams*, 965 F.3d at 1156; *Manners*, 891 F.3d at 969 ("[P]robable cause need only exist for one offense to justify [a] warrantless arrest").

Dufour also was entitled to qualified immunity on Black's claim that he used excessive force. Although the use of excessive force to make an arrest violates the Fourth Amendment, the right to make an arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Defeating qualified immunity on the excessive force claim would require Black to establish that Dufour used unconstitutionally excessive force and that the violation of the Fourth Amendment was clearly established at the time of the incident. *See Brown v. City of Huntsville*, 608 F.3d 724, 734 (11th Cir. 2010). Black argues that Dufour handcuffing him on the ground was excessive because it "was a complete form of imprisonment." But Black would have to allege more than a *de minimis* use of force to establish that Dufour's actions rose to the level of a constitutional violation. *See Graham*, 490 U.S. at 394; *Rodriguez v. Farrell*, 280 F.3d 1341, 1352 (11th Cir. 2002) (explaining that even

23-13632              Opinion of the Court                    9

painful handcuffing, without more, is not excessive force in cases where the resulting injuries are minimal). Although Dufour did hold Black at gunpoint, that threat of force was not a clearly established violation of the Fourth Amendment. *See Graham*, 490 U.S. at 396 (explaining that the reasonableness of force used "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.").

We thus **AFFIRM** the dismissal of Black's amended complaint.