**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-11869

Non-Argument Calendar

_____

GARRETT M. COOK,

*Plaintiff-Appellant,*

*versus*

MICHEAL BROOKS,
  Individually,
MARK DAINTY,
  Individually,
DINA RUSSELL,
  Individually ,
BRITT WILLIAMS,
LARRY WILLIAMS,
  Individually, et al.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:23-cv-02735-KKM-LSG

_____

Before JORDAN, KIDD, and HULL, Circuit Judges.

PER CURIAM:

Garrett Cook, a former sheriff's deputy, sued (1) the Sheriff of Polk County, Florida, individually and in his official capacity, and (2) six law enforcement officers, individually, who worked for the Sheriff. Cook's amended complaint asserted claims of false arrest and malicious prosecution under 42 U.S.C. § 1983, as well as claims of false arrest under Florida law. The defendant officers moved to dismiss Cook's suit based on qualified immunity and failure to state a claim. The district court granted the motion to dismiss the federal claims and declined to exercise supplemental jurisdiction over the state-law claims. Cook appealed. After careful review, we affirm the district court's order.

## I. FACTS

At the motion-to-dismiss stage, we accept the facts alleged in Cook's amended complaint as true and construe them in the light most favorable to Cook. *See Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 856 (11th Cir. 2023). We recount what Cook's amended complaint alleged.

25-11869                Opinion of the Court                3

### A.    The Traffic Stop

On December 21, 2020, three deputies with the Polk County Sheriff's Office conducted a traffic stop in Winter Haven, Florida. Cook, at the time a sheriff's deputy, assisted with the traffic stop. Two other deputies were involved with the stop: Raczynski and Lawson.

The traffic stop turned into a search of the suspect's vehicle after a K9 indicated the presence of narcotics. The vehicle search uncovered a small bag of cannabis, a cell phone, and $723 cash. After the suspect was arrested, Cook counted and verified the amount of money and then handed it to Lawson. Cook had no further contact with the money.

A few days later, on December 23, 2020, Raczynski deposited thirteen pieces of evidence into a storage locker but did not deposit or log the $723 cash. The traffic stop suspect was arrested for possession with intent to sell. Charges against the suspect were ultimately dismissed on March 22, 2021.

### B.    The Coverup

On March 15, 2021, Raczynski called a property and evidence clerk and told her that, after he moved the evidence bag from Lawson's trunk, he could not find the $723 cash. Raczynski told her "that the missing money was being handled by 'floater money.'" The clerk became suspicious after she could not find any record of Raczynski submitting cash into evidence, and she reported the conversation to her supervisor.

The next day, Raczynski created a supplemental report that listed the $723 cash.  Without Cook's permission, Raczynski used Cook's password to electronically notarize the supplemental report.

## C.    The Investigation

On March 18, 2021, Detective Michael Brooks interviewed Sergeant Anderson about the missing cash.[1]  Anderson relayed a conversation he had with Raczynski.  Per Anderson, Raczynski said that he left all the evidence and the money at the scene of the traffic stop with Lawson.  Raczynski also stated that when he went to retrieve the money from Lawson, the money was not there.  Raczynski also stated that he had planned to submit personal money into evidence to replace the missing cash.

The story Raczynski told Sergeant Anderson was different from what he told others in the sheriff's office.  Raczynski told another detective that "he placed the money in a safe at the Property and Evidence section because he had dropped it into evidence without a label."

On March 19, 2021, Detective Brooks interviewed Raczynski.  Raczynski admitted that he knew Cook's password and did not contact Cook before using Cook's password to electronically notarize his supplemental report.  Raczynski also told Detective Brooks that Lawson sent him $500 via CashApp to

---

[1] Sergeant Anderson "took over for" Sergeant Taylor Plowden, the supervisor who approved the supplemental report.

replace the missing money, and he agreed to contribute the remaining $223 himself.

The same day, Detective Brooks interviewed Lawson who stated that he placed the cell phone, money, and small bag of cannabis into an evidence bag. Lawson further stated that Raczynski placed the evidence bag into Lawson's car, and Raczynski and Lawson then had an argument about who would take custody of the bag.

Neither Lawson nor Raczynski made any allegation that Cook ever had possession of the money after Cook counted it and gave it to Lawson. Cook did not agree to assist in replacing the money or otherwise plan to replace the missing currency.

Also on March 19, Detective Brooks and Sergeant Mark Dainty interviewed Cook. Cook told the investigators that his sole involvement with the money was counting it at the scene. Cook stated that he did not notarize Raczynski's supplemental report or authorize Raczynski to use his credentials.

Cook told the investigators to go to the Sheriff's IT department "and look at his log in times, IP Address, location of the log in, etc." Cook said that the IT records would establish that he did not notarize the supplemental report. Cook also advised Brooks and Dainty to contact Cook's supervisor who would confirm that he was out of county at training on the day that the supplemental report was submitted and, therefore, could not have notarized the report.

## D.    The Arrest

Detective Brooks discussed the evidence with several people in his chain of command in the sheriff's office: Sergeant Dainty, Lieutenant Dina Russell, Major Britt Williams, and Chief Larry Williams. This group collectively made the decision to arrest Cook because of his apparent involvement in Lawson and Raczynski's scheme to cover up the missing money. They reached this decision without looking into Cook's computer records or talking to his supervisor about his alibi.

On March 19, 2021, Brooks arrested Cook and charged him with one count of conspiracy to commit tampering with or fabricating evidence.[2] Because of his arrest, Cook spent one day in jail. On May 14, 2021, the prosecutor's office dropped the charges against Cook. In his amended complaint, Cook made no allegations about any legal process that took place between his arrest and the dismissal of the charges.

On the day of his arrest, Cook resigned from his deputy position with the Polk County's Sheriff's Office and, since then, has lost out on other law enforcement job opportunities because of his arrest.

---

[2] Raczynski was arrested and charged with (1) conspiracy to commit tampering or fabricating evidence, (2) forgery, and (3) uttering a forged instrument. Lawson was charged with conspiracy to commit tampering or fabricating evidence.

## II.  PROCEDURAL HISTORY

In his amended complaint, Cook sued (1) personnel in the sheriff's office Brooks, Dainty, Russell, Britt Williams, Larry Williams, and Sergeant Taylor Plowden in their individual capacities and (2) Sheriff Grady Judd in his individual and official capacity.  Cook raised claims of (1) false arrest and malicious prosecution under 42 U.S.C. § 1983, and (2) false arrest under state law.

All defendants moved to dismiss Cook's amended complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that (1) the defendants were entitled to qualified immunity because arguable probable cause existed to arrest Cook; (2) Cook did not adequately allege certain defendants' personal involvement in his arrest; and (3) Cook did not allege that he was arrested pursuant to a legal process which defeated his malicious prosecution claims.

Cook filed a response in opposition to the motion to dismiss. At the end of his response, in a conclusory fashion, Cook asked for "a final chance to amend the pleadings."

The district court granted the defendants' motion to dismiss as to Cook's federal claims.  For the false arrest claims, the district court determined that the defendants had qualified immunity because Cook's arrest was supported by arguable probable cause. As for the malicious prosecution claims, the district court concluded that Cook failed to allege that his arrest was pursuant to a legal process and did not identify any other seizure.  Thus, Cook

failed to allege one of the necessary elements of a malicious prosecution claim.

The district court declined to exercise supplemental jurisdiction over Cook's state-law claims. As for Cook's request for a "final chance to amend" his complaint, the district court determined that the request was procedurally improper and denied it.

Cook moved for reconsideration, which the district court denied, reasoning that Cook was merely attempting to relitigate his prior arguments. Cook timely appealed.

## III.  DISCUSSION

### A.    False Arrest Claims

#### 1.     Qualified Immunity

"Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Lane v. Franks*, 573 U.S. 228, 243 (2014) (quotation marks omitted). If an official was acting within his discretionary authority, the plaintiff must establish that the official is not entitled to qualified immunity by showing the official's conduct (1) violated a constitutional right (2) that was clearly established at the time of the official's conduct. *See Roberts v. Spielman*, 643 F.3d 899, 904 (11th Cir. 2011). For a constitutional right to be clearly established, "existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate."

*Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014) (quotation marks omitted).

Ordinarily, "it is proper to grant a motion to dismiss on qualified immunity grounds when the complaint fails to allege the violation of a clearly established constitutional right." *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quotation marks omitted). We review *de novo* the district court's grant of qualified immunity at the motion-to-dismiss stage. *See Baker v. City of Madison*, 67 F.4th 1268, 1276 (11th Cir. 2023).

Here, it is undisputed that the defendant officers were acting within their discretionary authority when they arrested Cook. So we evaluate whether Cook has shown that his arrest violated his clearly established constitutional rights.

2.      Fourth Amendment and Probable Clause

"Under the Fourth Amendment, an individual has a right to be free from unreasonable searches and seizures." *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007) (quotation marks omitted). "[A]n arrest is a seizure of the person." *Id.*

"Probable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *Id.* (quoting *United States v. Floyd*, 281 F.3d 1346, 1348 (11th Cir. 2002) (*per curiam*)). "Probable cause does not require conclusive evidence and 'is not a high bar.'" *Washington v. Howard*, 25 F.4th 891, 899 (11th Cir. 2022) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)).

"An arresting officer is required to conduct a reasonable investigation to establish probable cause." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998). "Where it would appear to a cautious man that further investigation is justified before instituting a proceeding, liability may attach for failure to do so, especially where the information is readily obtainable, or where the accused points out the sources of the information." *Id.* at 1435-36 (citation modified). That said, an officer "need not take every conceivable step at whatever cost, to eliminate the possibility of convicting an innocent person." *Id.* at 1436 (quoting *Tillman v. Coley*, 886 F.2d 317, 321 (11th Cir. 1989)).

In the qualified immunity context, an officer need not have actual probable cause; arguable probable cause is sufficient. *See Skop*, 485 F.3d at 1137. "An officer has *arguable* probable cause if 'a reasonable officer, looking at the entire legal landscape at the time of the arrests, could have interpreted the law as permitting the arrests.'" *Garcia v. Casey*, 75 F.4th 1176, 1186 (11th Cir. 2023) (quoting *Wesby*, 583 U.S. at 68). An officer may lack arguable probable cause because: (1) "an existing precedent establishes that there was no actual probable cause for an arrest on similar facts"; (2) "the text of an applicable statute plainly precludes him from making an arrest under that statute"; or (3) "the officer may have been so lacking in evidence to support probable cause that the arrest was obviously unconstitutional." *Id.* at 1187.

3.    Criminal Conspiracy to Fabricate Evidence

Cook was arrested for conspiracy to tamper with or fabricate evidence, in violation of Fla. Stat. §§ 918.13 and 777.04(3).  The text of the Florida statute criminalizing tampering with or fabricating evidence states:

(1) It is unlawful for any person, knowing that a criminal trial, proceeding, or investigation by a duly constituted prosecuting authority, law enforcement agency, grand jury, or legislative committee of this state is pending or is about to be instituted, to:

(a) Alter, destroy, conceal, or remove any record, document, or other item with the purpose to impair its verity or availability in such proceeding or investigation; or

(b) Make, present, or use any record, document, or other item, knowing it to be false.

Fla. Stat. § 918.13.

As to the conspiracy element, a person is guilty of criminal conspiracy if he "agrees, conspires, combines, or confederates with another person or persons to commit any offense."  Fla. Stat. § 777.04(3).  The Florida Supreme Court has explained the "crime of conspiracy is defined as an agreement, express or implied, between two or more people to commit an unlawful act."  *Bradley v. State* , 787 So. 2d 732, 740 (Fla. 2001) (per curiam).  "Conspiracy can be proven by circumstantial evidence and thus a jury may infer that an agreement existed to commit a crime from all the surrounding and accompanying circumstances."  *Id.*

"[U]nder Florida law, proof of an overt act in furtherance of the conspiracy is not necessary to prove the crime of conspiracy." *Williams v. State*, 314 So. 3d 775, 788 (Fla. Dist. Ct. App. 2021) (citing *Slaughter v. State*, 301 So. 2d 762, 765 (Fla. 1974)). "A defendant may be guilty of conspiracy even if []he played only a minor role in the total operation." *Id.* at 789 (quotation marks omitted).

In this case, an officer would commit the crime of tampering or fabricating evidence if he (1) knew that a criminal investigation or prosecution was pending and (2) made a document or record knowing it to be false. *See* Fla. Stat. § 918.13. An officer who submitted a supplemental report falsely attesting that $723 cash was entered into evidence, when the officer knew the cash was evidence in ongoing criminal proceedings, would be guilty of tampering or fabricating with evidence. *See id.*

Critically here, Cook could be guilty of the charged conspiracy to tamper with or fabricate evidence if he entered an agreement to make such a false record. *See* Fla. Stat. § 777.04(3); *Bradley*, 787 So. 2d at 740. Specifically, Cook could be guilty so long as he entered such an agreement, even if he personally took no overt act in furtherance of the conspiracy, and even if Raczynski and Lawson were the main actors and Cook played only a "minor role." *See Williams*, 314 So. 3d at 788-89.

Importantly too, the officers did not need definitive proof that Cook conspired to fabricate evidence before arresting him. *See Howard*, 25 F.4th at 899. The officers only needed probable cause,

or evidence "sufficient to warrant a reasonable belief" that Cook had agreed to the scheme to submit a false report. *See Skop*, 485 F.3d at 1137. And to be protected from suit, the officers only needed arguable probable cause, an even lower standard. *See id.*

4.      Analysis

After review, we conclude the district court did not err in concluding the defendant officers had arguable probable cause to arrest Cook. As the district court pointed out (1) Cook conducted the traffic stop and vehicle search with Raczynski and Lawson; (2) Cook counted the money at the scene; (3) after suspicions arose about the money, a supplemental report that appeared to be notarized by Cook was submitted attesting to the entry of the cash into evidence; and (4) the cash was never placed into evidence. Based on these facts, the district court properly determined that a reasonable officer could have believed that Cook entered an agreement with Raczynski and Lawson to cover up the missing cash by submitting a false report.

Cook argues that the district court erred by relying on the fact that the supplemental report appeared to be notarized by him because, taking his allegations in the amended complaint as true, he did not notarize the report and did not allow Raczynski to use his credentials to do so. Even without those allegations, Cook asserts, the arresting officers at minimum had readily available evidence that would show that Cook did not notarize the report.

Cook identifies two avenues of investigation that the arresting officers chose not to pursue: (1) checking IT records to

see that Cook was not logged on when the supplemental report was submitted, and (2) talking to Cook's supervisor who would say that Cook was attending an out-of-county training when the supplemental report was submitted. Cook notes that this potential evidence was easily accessible to the arresting officers and pointed to by Cook when the officers interviewed him.

But these avenues of investigation—the IT records and Cook's supervisor—would have shown only that Cook did not personally notarize the supplemental report. Even with this additional information, a reasonable officer could have believed that (1) Cook gave Raczynski his password, (2) Cook authorized Raczynski to use his password, and (3) Cook was working with Raczynski and Lawson to cover up the missing money.

Granted, Raczynski and Cook told officers that Cook did not permit Raczynski to use his password. Still, this does not necessarily mean that the officers lacked arguable probable cause and had to believe everything Raczynski said.

"Probable cause does not require officers to rule out a suspect's innocent explanation for suspicious facts," and an officer "need not resolve conflicting evidence in a manner favorable to the suspect." *Howard*, 25 F.4th at 902 (quoting *Wesby*, 583 U.S. at 61); *see also Davis v. City of Apopka*, 78 F.4th 1326, 1349 (11th Cir. 2023) (explaining that Eleventh Circuit precedent has never required that, before making an arrest, an officer is required "to believe, or to rule out, a suspect's innocent explanation").

In other words, an officer can infer that a suspect is lying, so long as that inference is reasonable under the totality of the circumstances. *See Wesby*, 583 U.S. at 60. And as Cook's own allegations show, Raczynski lied to officers several times. Because Raczynski's story kept changing, the officers had "reason to discredit everything []he had told them." *Id.* at 60.

In sum, considering all of the information and circumstances known to the officers at the time of the arrest, an officer could have reasonably believed that Cook conspired with the other deputies—Lawson and Raczynski—to submit the false supplemental report. *See Skop*, 485 F.3d at 1137. This is true notwithstanding Cook's assertion of his innocence when interviewed by the officers or any other evidence Cook points to in his brief. *See Howard*, 25 F.4th at 902.

Even if the officers lacked actual probable cause, Cook fails to show that they lacked arguable probable cause. Cook does not point to "an existing precedent" with similar facts to his case. *See Garcia*, 75 F.4th at 1187. Indeed, the district court's order thoroughly discussed this Court's precedent and why our cases finding no probable cause are distinguishable from Cook's situation. Cook does not argue that the officers were "plainly preclude[d]" from arresting him under the text of the relevant statutes, nor does he show that the arrest was so "obviously unconstitutional" that the officers should not be entitled to qualified immunity. *See id.*

Because the defendant officers had at least arguable probable cause to arrest Cook, the district court did not err by dismissing his false arrest claims.  *See Corbitt*, 929 F.3d at 1311.[3]

## B.    Malicious Prosecution Claims

We first distinguish between false arrest and malicious prosecution claims and the distinct seizures required for each claim.   Under the Fourth Amendment, a claim of false arrest concerns a seizure *without legal process*, such as the warrantless arrests here.  *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020).   In contrast, a claim of malicious prosecution requires a seizure "pursuant to legal process."  *Id.* (quoting *Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016)).   Seizures pursuant to legal process may include a warrant-based arrest and arrests following arraignment, indictment, or a probable cause hearing.  *Id.*

Here, the district court dismissed Cook's malicious prosecution claims because he failed to allege that his arrest was pursuant to legal process and did not identify any additional seizure.[4]  Cook appears to concede that he did not allege seizure pursuant to legal process.  He argues that "discovery would reveal" that he was subject to legal proceedings prior to his arrest.  In a footnote, Cook also notes that his request for leave to amend was

---

[3] Because qualified immunity bars Cook's false arrest claims, we do not address the defendant's alternative argument that Cook failed to adequately alleged the involvement of the non-arresting defendants.

[4] We review *de novo* the district court's grant of a motion to dismiss for failure to state a claim.  *Baker*, 67 F.4th at 1276.

denied, although he does not make any arguments about the denial of leave to amend.

These arguments do not change that Cook's amended complaint failed to allege an essential element of a malicious prosecution claim. *See Williams*, 965 F.3d at 1158. Accordingly, we affirm the district court's dismissal of the malicious prosecution claims.

### C.    State Law Claims

Because the district court did not err in dismissing Cook's federal claims, it properly declined to exercise supplemental jurisdiction over his state-law claims. *See* 28 U.S.C. § 1367(c)(3).

## IV.  CONCLUSION

For the above reasons we affirm the district court's dismissal of Cook's false arrest and malicious prosecution claims under 42 U.S.C. § 1983 and the dismissal of his state-law false arrest claims.

**AFFIRMED.**